**Billy H. COX, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 91–1455.

United States Court of Veterans Appeals.

Decided May 12, 1993.

As Amended May 17, 1993.

James W. Stanley, Jr., North Little Rock, AR, was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Rudrendu Sinhamahapatra, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

The veteran appeals a July 8, 1991, Board of Veterans' Appeals (BVA or Board) decision concluding that there was no "new and material" evidence to reopen his claims for service connection for hypertension and for a stomach disorder, both of which had been previously and finally denied by a 1987 BVA decision.

## BACKGROUND

The veteran served on active duty from November 1974 to January 1976. On his October 1974 entrance examination, the veteran indicated that he had high blood pressure, and had been classified 4F and rejected for service three years earlier because of that condition. His blood pressure at the time of his entrance examination was 124/86. There is no record of any treatment for high blood pressure or stomach problems in service. On the December 1975 separation examination, the veteran again indicated that he had previously been rejected for service due to high blood pressure. He did not report any stomach problems. His blood pressure at the time of that examination was 130/78. No stomach problems were noted.

On a private physical examination in January 1979, the veteran's blood pressure was 128/80, and the examiner noted that the veteran reported that his blood pressure sometimes elevated when he had problems with his wife. No stomach problems were then reported or noted. In July 1979, the veteran was examined at a private medical center for gastrointestinal bleeding. The examiner (Dr. Faris) noted that the veteran's blood pressure was 130/100 when he arrived but then went down to 130/80. The examiner stated that "the 100 mm diastolic pressure is rather unusual for this patient and is probably on the basis of an emotional reaction." An examination of the gastrointestinal system revealed no abnormalities. Dr. Faris concluded that the veteran's gastrointestinal bleeding was probably a result of his emotional status.

In 1986, the veteran submitted to the Regional Office (RO) a request to reopen his claims for service connection for lung

and stomach disorders, and for high blood pressure, which he claimed he had first filed in 1976. There is no record of prior claims. In July 1986, he was given a Veterans' Administration (now the Department of Veterans Affairs) examination for purposes of his claim. His blood pressure, on five different readings, was between 150/110 and 149/108. X–rays of the gastrointestinal system revealed a small hiatus hernia and "occasional minimal gastroesophageal reflux" (reverse flow of material from stomach to esophagus). The examiner diagnosed hypertension and "hiatus hernia with reflux."

In a July 1987 decision, the BVA denied the veteran's claims. The Board stated that the stomach claim had been addressed in an October 1981 RO decision, but that the Board would adjudicate the claim de novo anyway. The Board concluded that there was no evidence of hypertension or a stomach disorder until many years after service.

In 1988, the veteran attempted to reopen his claims for service connection for hypertension and stomach problems, and submitted additional evidence, as discussed below. In March 1985, he was treated at a private medical center for "stomach cramps/intestinal pain." The examiner stated that the veteran was "[h]aving discomfort from his ulcer"; but the diagnosis was "Interitis" (presumably meaning "enteritis," which is inflammation of the intestine). His blood pressure at that time was 140/80. In a 1987 private medical examination, he was diagnosed with high blood pressure and an ulcer. The veteran also submitted a report of private medical treatment in 1988, which contains, under "visits and findings," the notation "1976—high blood pressure—stomach problems." He submitted a statement from his sister stating that he had complained of food poisoning and stomach pain during his service, and that she had observed him to be in gastric distress while he was home on leave.

In January 1990, the veteran testified under oath before the RO. He testified that he had suffered food poisoning in the service, and had gone to the dispensary, where he was found to have high blood pressure. He testified that he had been treated by Dr. Plum in 1976 for high blood pressure and stomach problems, and that he had been treated by Dr. Faris while he was still in the service (while home on leave). The hearing officer asked whether he had sought to obtain the records of such treatment from Drs. Plum and Faris. The veteran responded that Dr. Plum had been looking for the 1976 records for some time and had not yet found them, and stated that they may have been discarded. He further stated that although Dr. Faris was deceased the veteran had copies of Dr. Faris' records from 1975, and would submit them to the RO. The hearing officer stated that he would ask the service department to search for any additional records of treatment in service, and that the claimant should submit Dr. Faris' records within 60 days, at which time he would render a decision. In March 1990, the hearing officer denied the claims. He stated that the service department indicated that there were no additional medical records, and the veteran had not submitted any additional evidence.

In its July 1991 decision, the Board concluded that there was no "new and material" evidence to reopen the claims. With regard to the hypertension claim, the Board stated that the evidence received since the prior decision "pertains solely to the post-service treatment of the veteran and fails to reflect any contemporaneous evidence illuminating the veteran's present hypertension in service or to a compensable degree within one year of service separation." *Billy H. Cox*, BVA 91–20686, at 5 (July 8, 1991). The Board concluded: "[W]e find the evidence is not new and material as it would not, when taken in the context of the record as a whole, establish that essential hypertension was present in service or to a compensable degree within one year of service separation." With regard to the stomach claim, the Board concluded:

> The clinical evidence refers primarily to medical findings many years after service. Even assuming, without conceding, that he had food poisoning in service,

this is by nature an acute and transitory problem, and would not normally lead to a chronic stomach disorder. The fact that the veteran may have been observed on occasion to be in gastric distress, if true, likewise would not be evidence necessarily of a stomach disability.

The Board concluded: "[T]he Board finds that the evidence is not new and material as it would not, when taken in the context of the record as a whole, establish that a stomach disorder was present in service."

## ANALYSIS

■ The Board misstated the test for "new and material" evidence in the portion of the decision just quoted. The "new and material" evidence does not have to "establish" service connection; it must merely create a "reasonable possibility" of service connection for purposes of reopening the claim. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). For this purpose, the credibility of the evidence, although not its weight, is to be presumed. *Kates v. Brown*, 5 Vet.App. 93 (1993); *Justus v. Principi*, 3 Vet.App. 510, 513 (1992). Once the claim is reopened, then the adequacy of the evidence (new and old) to *establish* service connection is a question of fact for the Board to determine in accordance with the usual rules of adjudication of fact questions—burden of proof, weight, credibility, benefit of the doubt, etc. Nonetheless, the Court agrees with the Board that there was no "new and material" evidence produced in this case. The misstatement noted above is harmless error under the circumstances, and we will affirm the findings. *See* 38 U.S.C.A. § 7261(b) (West 1991).

We take this occasion to synthesize our case law as to the first step of the "two-step" process, codified in *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991), that must be followed when a claimant "seeks to reopen a claim based upon new evidence." "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin*,

*supra*, citing the Social Security Disability (SSD) case of *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981), must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *See Kates, supra; Justus, supra; Colvin, supra.*

In the *Chaney* case, the Fifth Circuit noted that the "reasonable possibility" test, which it was establishing, was less stringent than a "reasonably likely" test which the Fifth Circuit said had already been adopted by the Fourth and Tenth Circuits. *Chaney*, 659 F.2d at 679 n. 4 (citing *King v. Califano*, 599 F.2d 597 (4th Cir.1979), and *Cagle v. Califano*, 638 F.2d 219 (10th Cir. 1981)). After *Chaney* was decided, six circuits adopted the "reasonable possibility" test and one adopted a test based on whether the outcome "might reasonably have been different." *Compare Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir.1988) ("reasonable possibility"); *Szubak v. Secretary of Health & Human Serv.*, 745 F.2d 831, 833 (3d Cir.1984) (same); *Johnson v. Heckler*, 765 F.2d 145 (6th Cir.1985) (unpublished decision; text in WestLaw) (same); *Godsey v. Bowen*, 832 F.2d 443, 444 (7th Cir.1987) (same); *Booz v. Secretary of Health & Human Serv.*, 734 F.2d 1378, 1382 (9th Cir.1984) (same); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir.1986) (same), *with Falu v. Secretary of Health & Human Serv.*, 703 F.2d 24, 27 (1st Cir. 1983) ("might reasonably have been different"). Of interest, however, is that the Fifth Circuit's characterization of the so-called "reasonably likely" test employed by the Fourth and Tenth Circuits was the result of a misreading of *King* and *Cagle, supra. See Borders v. Heckler*, 777 F.2d 954 (4th Cir.1985) (Fourth Circuit, concluding that Fifth Circuit had mischaracterized *King*, stated that "we perceive no difference between the standard as expressed [in *King*] and the standard as expressed by other courts"); *Godsey, supra* (Seventh Circuit concluded that "[t]here is no conflict among circuits, since the Tenth Circuit like the Fourth Circuit has always adhered

to the 'reasonable possibility' standard"). Hence, the test adopted by this Court in *Colvin* represents the unanimous view of all ten circuit courts of appeals that have addressed this aspect of the standard for reopening SSD cases on the basis of "new and material" evidence.

■ This case illustrates a situation where evidence which is probably relevant and probative as to material issues—manifestation of a chronic condition within one year after service under 38 U.S.C.A. § 1112(a)(1) (West 1991) and 38 C.F.R. § 3.307(a)(3) (1992) (assuming for purposes of the opinion that appellant was treated in 1976)—falls short of creating a reasonable possibility of changing the result. The evidence relied on by appellant as "new and material" consists primarily of records of treatment many years after service that do not indicate in any way that the conditions are service connected. There is some indirect evidence by way of a notation on a 1988 report that appellant claims to have been treated in 1976 for high blood pressure and stomach problems. While a record of such treatment might be relevant and probative (depending of course on its content) as to the issue of continuity of symptomatology and, hence, chronicity, under 38 C.F.R. § 3.303(b) (1992), it would not create a reasonable possibility of changing the outcome. As to the hypertension, it is noted that appellant's blood pressure readings were normal at the time of his separation. Subsequent readings, even if they exist within the one-year presumption period under 38 C.F.R. §§ 3.307, 3.309 (1992), establishing some degree of hypertension at a time subsequent to separation, would not establish diastolic pressure of "predominantly" 100 or more, as required for a diagnosis of hypertension, that could reasonably be connected to his service. 38 C.F.R. § 4.104, Diagnostic Code 7101 (1992); *see Rabideau v. Derwinski*, 2 Vet. App. 141, 143 (1992). As to the stomach problem, as the Board noted, the mere fact of stomach "upset" or even adverse reaction to certain foods in service could not reasonably demonstrate the necessary chronicity that would be required to establish a service-connected condition, because there is no evidence that appellant had gastrointestinal problems at separation from service. The same is true of the lay testimony of appellant and his sister. That testimony, while again relevant and probative as to a possible acute and transitory stomach condition, could not establish, in any way, the essential chronicity or relationship between the veteran's current condition and his service. *See Espiritu v. Derwinski*, 2 Vet.App. 492 (1992). Nor could the existence of an unspecified "stomach problem" within the presumption period establish an "ulcer" manifested to a degree of 10% within that period, under 38 C.F.R. § 3.307(a)(3).

Accordingly, even conceding arguendo the fact of treatment in 1976 and presuming the credibility of all the "new" evidence, there is no reasonable possibility that simply being "treated" in 1976 could reasonably change the result of the previous adjudication. The Court concludes, therefore, that the BVA was correct in finding that no new and material evidence had been presented and, hence, in not reopening the claim for readjudication based on all the evidence. The decision of the BVA is AFFIRMED.