**Sigmond V. SKLAR, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–1586.**

United States Court of Veterans Appeals.

May 18, 1993.

Sigmond V. Sklar, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Peter M. Donawick, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY and STEINBERG, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, Sigmond V. Sklar, appeals from a July 5, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which found that appellant had not submitted new and material evidence sufficient to reopen his claim of entitlement to service connection for post-traumatic stress disorder (PTSD). The Court will affirm the BVA decision.

## I. Background

Appellant served in the United States Marine Corps from June 5, 1943, until February 13, 1946. He was in combat in April 1945, and was a member of the occupational forces in Japan from September 1945 to January 1946. There is no indication that the veteran was wounded in action, nor do his service medical records (SMRs) reflect the existence of any psychiatric abnormality. Appellant's separation examination on February 11, 1946, found him to be physically qualified for an honorable discharge. Appellant's original claim for entitlement to service connection for a nervous condition was denied on August 19, 1952. On April 2, 1982, appellant reported to the Veterans' Administration (now Department of Veterans Affairs) (VA) Medical Center (MC) at Bay Pines, Florida, with complaints of frequent nightmares and disturbing dreams involving his war experiences during World War II (WWII). However, at that time, a Dr. Pearse observed that appellant was alert, with no acute distress. Appellant was accepted for treatment at that VAMC's mental health center, and an appointment was scheduled for April 29, 1982. At his appointment on April 29, 1982, he was diagnosed with delayed PTSD. Appellant testified at his personal hearing before the VA regional office (RO) on April 25, 1983, that April 29, 1982, was the first time he had received treatment for his condition.

On August 27, 1982, appellant was given a special psychiatric examination. Dr. Huber, a VA neuropsychiatrist, diagnosed appellant with "[c]hronic brain syndrome associated with generalized and cerebral arteriosclerotic changes." It was recommended that appellant continue his visits to the mental health clinic.

A rating decision dated December 28, 1982, denied service connection for post-traumatic stress neurosis (PTSN). The August 27, 1982, examination by the VA neuropsychiatrist failed to show any psychiatric disease.

Appellant was evaluated on May 16, 1983, for "reconciliation of diagnosis." Dr. March, a VA staff psychiatrist, found that "the signs and symtoms [sic] of a chronic brain syndrome are quite clear. It is my opinion that this veteran suffers from a chronic brain syndrome." Dr. March further stated:

The problem appears to have an iatrogenic [induced inadvertently by the medical treatment or procedures of a physician. *See* WEBSTER'S MEDICAL DESK DICTIONARY 322 (1986) ] core. The recurrent combat-related thoughts, alienation and detachment, anxiety, rage, sleep disturbance, low stress tolerance, somatic complaints, and a diminished interest in social activities usually found in this syndrome are not paramount and play no role in this veteran.

On May 20, 1983, a rating decision was issued which confirmed and continued the denial of service connection for PTSN from the December 1982 decision.

Appellant submitted a letter dated July 12, 1983, from his *pharmacist*, Galen Lucy. Mr. Lucy stated that the prescriptions he had been filling for appellant "are indicated for the symptoms related to stress, post traumatic stress neurosis, and depression," and that "[i]t would seem unlikely that the above medications are indicated in chronic brain syndrome with cerebral arteriosclerosis [sic]."

Appellant's attorney referred appellant to Dr. Rueda, a private physician, for an evaluation of possible post-traumatic stress syndrome (PTSS). Dr. Rueda, in a letter dated August 5, 1983, stated that his one observation of appellant did not fully qualify him to establish whether appellant suffered from PTSS. Dr. Rueda found that appellant did describe some symptoms of depression, including anxiety, and showed no neurovegetative signs of depression. However, Dr. Rueda opined that the anxiety was a prominent symptom which appeared to be of multiple origins, including appellant's argument with the VA regarding his diagnosis.

A rating decision on August 31, 1983, denied service connection for PTSD. The rating board found that the evidence did not warrant a change in the denial of service connection for PTSN.

On September 22, 1983, Dr. Rueda wrote a letter to the VARO to clarify his earlier letter; he stated that appellant should see a psychiatrist who has more experience in this type of pathology. Dr. Rueda reiterated that because he had seen appellant only one time, he was not qualified to make a diagnosis. A confirmed rating decision was issued on October 3, 1983.

On October 18, 1983, Dr. Bowman, a private physician, wrote a letter stating that he had examined appellant on September 13, 1983. Dr. Bowman stated that he did not feel that appellant "had any evidence of chronic brain syndrome, in particular, and he was well oriented as far as time, place, names, etc. were concerned." In November 1983, appellant submitted a medical summary he had prepared. A confirmed rating decision was issued on November 7, 1983. Appellant submitted another letter on November 19, 1983. A confirmed rating decision was issued on December 6, 1983.

On May 15, 1984, Dr. Vesley, a private psychiatrist, wrote a letter to the VA. Dr. Vesley stated he had been treating appellant for the past several weeks. It was Dr. Vesley's opinion that appellant filled the criteria for a diagnosis of PTSS, secondary to trauma which occurred in WWII. Furthermore, Dr. Vesley stated that appellant was totally disabled as a result of his problems.

The BVA issued a decision on August 10, 1984, denying entitlement to service connection for a psychiatric disorder, including a PTSD. The BVA found that the SMRs were "entirely silent for references to a psychiatric disorder," and that appellant's separation examination showed no psychiatric abnormalities. The Board stated that, aside from one isolated statement in 1952, "voluminous post service medical records contain no references whatsoever to a psychiatric condition until April 1982." The Board acknowledged that PTSD may remain quiescent for many years following a traumatic event, but opined it could not ignore the fact that symptoms of appellant's condition were not reported until 1982. Furthermore, the Board noted appel-

lant had been employed as a pharmacist for 25 years, and, while he was initially diagnosed with delayed PTSD, the records currently showed he was being treated for a generalized anxiety disorder. Finally, the Board stated that "dreams and recollections of service experiences, even if involving unpleasant and traumatic events, are insufficient in and of themselves to support a diagnosis of a [PTSD]."

On August 16, 1984, appellant submitted a 16–page challenge of the BVA decision. Appellant went back through the evidence previously submitted and reiterated his points of contention. Appellant submitted a second letter, 20 pages long, again reiterating his contentions as to the BVA decision, and provided a summary of his medical treatment over the years. A confirmed rating decision was issued on September 11, 1984.

Appellant submitted a second letter, dated October 17, 1984, from Dr. Vesley. Dr. Vesley stated that he was treating appellant for PTSS. Dr. Vesley wanted to add that appellant was unable to do any kind of work as a result of this PTSS. On October 19, 1984, appellant submitted a letter outlining his "stressors." A letter from Dr. Vesley, dated November 20, 1984, questioned why appellant had been denied service connection. A confirmed rating decision was issued on December 6, 1984.

Appellant submitted a letter, dated December 15, 1983, from Dr. Wallace, a specialist in bone and joint surgery. Dr. Wallace stated that he had treated appellant for painful feet and knees and that, during his treatment, appellant would mention his mental problems associated with dreams of war experiences. Dr. Wallace's diagnosis was PTSS related to war disorders. Appellant submitted a copy of an undated 19–page letter he wrote to the VA. Medical records of treatment at the Bay Pines VAMC for the period of January 2, 1985, until October 20, 1988, were submitted. The record contains entries from a Dr. Ryan, clinical psychologist, for the period of February 7, 1985, to October 20, 1988. A June 20, 1985, entry by Dr. Ryan noted that appellant was being seen for PTSD.

Dr. Ryan reported that appellant's symptoms included frequent nightmares, startle response, social withdrawal, anxiety, and poorly-controlled undercurrent of anger. A December 19, 1983, entry by Dr. Ryan noted that appellant was highly anxious and was revealing agitated depression with marked social withdrawal. A March 3, 1988, entry by Dr. Ryan labeled as an "interim report," noted that appellant "perceives himself as having P.T.S.D. related to his World War II experiences." On September 15, 1988, another "interim report" was prepared by Dr. Ryan. The diagnosis at this time was "anxiety disorder chronic and profound—with severe depressive features." The October 1988 monthly update listed the same diagnosis as the September report.

Appellant submitted four statements in support of his claim, dated January 11, 1985, February 4, 1985, February 7, 1985, and February 22, 1985. A confirmed rating decision was issued on February 26, 1985.

Appellant submitted a statement in support of his claim, dated April 7, 1985. It outlined appellant's previous contentions. A personal hearing was held on April 9, 1985. Appellant testified that a Dr. Ryan, from the Bay Pines VAMC Group Treatment Program, was treating him for PTSD. Appellant stated that he went to group sessions twice a month and had private sessions twice a month at Bay Pines. He stated that the treatment was for PTSD, not chronic brain syndrome.

Dr. Vesley wrote a letter dated April 18, 1985, stating that appellant was being seen on "weekly and bi-weekly" intervals. Dr. Vesley stated that he was treating appellant for his stress syndrome which was secondary to injury he had received in service. (Appellant was being seen by Dr. Vesley at the same time he was receiving treatment at the Bay Pines VAMC.) Appellant submitted a statement in support of claim, dated April 26, 1985. A confirmed rating decision was issued on May 31, 1985. Additional notes by a clinical psychologist were submitted. A confirmed rating decision was issued on July 28, 1985.

Dr. Vesley wrote a letter, dated July 29, 1985, to the VARO asking why appellant's claim had been denied. On October 23, 1985, Dr. Vesley wrote a letter describing appellant as depressed, despondent, out of touch with reality, confused, unable to relate to his surroundings well, and unable to carry on any kind of normal relationships with his peer groups. A confirmed rating decision was issued on October 28, 1985. On December 3, 1985, Dr. Vesley wrote the VARO inquiring why appellant's claim was again denied, because it would help him in dealing with appellant. Dr. Vesley then wrote a letter on January 21, 1986, stating that appellant's symptoms were "anxiety, depression, confusion, somatic complaints, diminished interest in life, diminished social activities and sleep disturbances and a very low stress tolerance." On February 6, 1986, a confirmed rating decision concluded there was no evidence that appellant's psychiatric disorder had its onset in, or resulted from, his period of military service.

After an appeal to the BVA, the BVA referred the matter to an independent medical expert, due to the differing diagnoses over the years. Dr. Jacobs, an associate professor of psychiatry at Yale University School of Medicine, in his letter dated March 12, 1987, gave his diagnostic impression of appellant as "generalized anxiety disorder with somatic and depressive symptoms in the differential diagnosis." In Dr. Jacobs' judgment, there was no convincing documentation of the existence of PTSD by symptomatic criteria. Dr. Jacobs went on to state that "[a]s part of the differential diagnosis, PTSD, delayed type, should be considered as a possibility." Dr. Jacobs stated, "I cannot say with a sufficient degree of certainty that the patient has [PTSD]; however, neither can I say with a high degree of certainty that he does not." Dr. Jacobs did note that while he was not surprised by the long delay in onset of the symptoms, there was nothing in appellant's history to indicate why the symptoms began when they did.

A special psychiatric examination was conducted on March 14, 1988, after the BVA's remand for that purpose, as part of

a VA compensation and pension examination. The psychiatric examination was performed by Drs. Hughes and Spoto. They had several concerns with appellant's claim for PTSD. Among these was that appellant displayed no genuine distress when speaking of the traumatic experiences; that his symptoms did not appear to have impaired him during his early and mid-adult life; and that appellant's use of "highly technical terms describing his symptoms and other events surrounding his syndrome and reading them from a list was highly unusual." The examiners found no evidence of organic brain syndrome. Their differential diagnosis was "post-traumatic stress disorder versus fictitious [sic: read factitious] PTSD or subclinical PTSD." The examiners found that while he may have some symptoms of PTSD, i.e., "flashbacks and nightmares," those symptoms were not sufficient to warrant a diagnosis of clinically significant PTSD.

On March 21, 1988, appellant was seen by Dr. Ryan for a "Differential diagnosis between PTSD AND Factitious PTSD." Dr. Ryan stated that based on the clinical records, observed behavior, and psychological testing, his choice between the two diagnoses would be "strongly in favor of" Factitious PTSD. Dr. Ryan listed his diagnostic impression as generalized anxiety disorder. On May 10, 1988, a confirmed rating decision was issued. It was noted in the rating decision that the special psychiatric examination, psychological testing, and social history were performed as part of the evaluation specified by the BVA, and that the diagnosis of PTSD was not supported.

Appellant was seen by a Dr. Boutin, a private psychologist, on June 29, 1988, for an independent evaluation. Dr. Boutin stated that his evaluation showed that appellant was not suffering from a chronic organic brain syndrome, but instead was suffering from PTSD. A confirmed rating decision denying service connection was issued on October 20, 1988. The rating board found that the additional evidence submitted at that time was not of sufficient probative value as to overcome all other evidence of record.

On May 11, 1989, the BVA issued a decision denying entitlement to service connection for a psychiatric disorder, including PTSD. In a 17-page decision, the Board addressed all of the evidence which had been submitted in appellant's claim. The Board cited to the March 1988 VA psychological examination in which two psychiatrists (Drs. Hughes and Spoto) had expressed several concerns about appellant's claimed PTSD. The BVA noted that the psychiatrists found no evidence of an organic brain syndrome, but, instead, found a differential diagnosis of PTSD versus "[factitious]" PTSD or subclinical PTSD, concluding that "while the veteran might have some symptoms of [PTSD] such as flashbacks and nightmares, they were not sufficient to warrant a diagnosis of clinically significant [PTSD]. The Board found that, while the newly submitted evidence confirms that the veteran has a psychiatric disorder, the evidence "does not establish that his psychiatric disorder is of service onset or in any way related to his period of military service, and does not confirm that he now has [PTSD]."

Subsequent to this decision, appellant again attempted to reopen his claim. The "new and material evidence" he relied on was a statement from Dr. Larach, an *arthritis and rheumatology* specialist. Dr. Larach wrote a letter dated June 2, 1989, which stated that appellant had been a patient of his since March 1989. Dr. Larach stated that appellant suffers from anxiety disorder, apparently secondary to postwar traumatic experience. Appellant also submitted clinical medical records from his treatment at Bay Pines for the period of June 1989 to September 1990. Those records showed evaluation of and treatment for a disorder alternately diagnosed as generalized anxiety disorder or PTSD or both.

Appellant submitted a patient referral authorization from Humana Hospital dated November 8, 1989. The principal diagnosis was anxiety. A confirmed rating decision denying service connection for PTSD was issued on January 3, 1990. Appellant then

submitted additional Humana records from February 1990. Appellant submitted a 30-page statement in support of his claim, dated February 5, 1990. This statement essentially recounted his wartime experiences and also was a digest, from the appellant's point of view, of the various diagnoses and adjudications he had received.

A personal hearing was held on June 20, 1990. The hearing officer affirmed the prior rating decision, on the basis that no additional evidence had been submitted that would show that the veteran had an acquired psychiatric disorder which was incurred during his period of active military service. Appellant submitted a statement in support of claim, dated October 20, 1990.

On July 5, 1991, the BVA issued a decision. This decision is the subject of the appeal now being considered by this Court. The BVA found that new and material evidence sufficient to reopen a claim of entitlement to service connection for PTSD had not been submitted. The BVA provided a summary of the evidence submitted prior to the March 1989 decision. The BVA went on to state:

> Evidence added to the record since [March] 1989 includes testimony offered by the veteran at a personal hearing, as well as a number of written statements which he subsequently submitted. Both oral and written evidence reiterates the veteran's prior contentions, along with his service-related experiences. Also submitted in conjunction with his recent claim were recent VA outpatient treatment records, alternately diagnosing generalized anxiety disorder and [PTSD] with depression. We note, however, that the latter diagnosis was based upon a history related by the veteran.

The Board then concluded that, after reviewing the record, "the additional evidence which claimant has submitted is neither 'new' nor 'material,'" and "[a]ccordingly, his claim is not reopened and the Board's 1989 decision remains final."

## II. Analysis

■ The sole issue before this Court is whether new and material evidence was presented subsequent to the May 1989 BVA decision. If there was such evidence, the Board was in error in not reopening the claim and readjudicating. On the other hand, if the evidence presented by appellant in his attempt to reopen his claim was not both new and material, the 1989 decision denying appellant's claim was final; the Board would have no authority to reopen. *See* 38 U.S.C.A. § 7104(b) (West 1991). New evidence is that which is not merely cumulative of other evidence of record. Material evidence is that which is relevant to and probative of the issue at hand and which (assuming its credibility) must be of sufficient weight or significance that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Justus v. Principi,* 3 Vet.App. 510, 512–13 (1992). The Board in the case sub judice found the evidence to be cumulative; it also determined that the "new" evidence was not material because when it is viewed in the context of all the evidence, both new and old, there was not a reasonable possibility that the outcome would change. The newly submitted evidence consisted of additional testimony by appellant, clinical notes from Humana Hospital, and a letter from Dr. Larach. They will be briefly discussed seriatim.

■ Appellant's own statements were essentially the same as his previous ones. To the extent the statements were different it was in nuance and minor detail and added little weight or significance to his previous testimony. As to the Humana clinical notes, this testimony was essentially not new and to the extent it was, it falls short of the significant weight that would make it material. In particular, appellant's own evaluation, reflected in those notes and his own statements, that he has PTSD is entitled to no weight at all. *See Espiritu v. Derwinski,* 2 Vet.App. 492 (1992). Many of the "new" clinical notes were from Dr. Ryan, a clinical psychologist. Prior to the March 1989 BVA decision, Dr. Ryan had rendered opinions and impressions in the most detailed of which he had opined, "[B]ased on clinical records, ob-

served behavior, and psychological testing the choice between a diagnosis of PTSD and Factitious PTSD would be strongly in favor of the latter. However, Mr. Sklar clearly has psychiatric problems of a neurotic nature which appears to be deep rooted and long standing[.]" Dr. Ryan's "new" statements reflect the same ambivalence and are thus clearly cumulative. Other "new" clinical notes by other medical personnel are "impressions" that are also, as the Board correctly noted, ambivalent as to an exact diagnosis. In view of the fact that these are clinical notes only and do not definitively diagnose PTSD, the Court agrees with the Board that there is no reasonable possibility that these notes, in the context of all the evidence, would change the outcome. Their weight, in the context of the more definitive medical evidence previously considered, is simply insufficient to be considered material.

▮ Apart from appellant's largely cumulative statements and the new clinical notes, the only other piece of "new" evidence that is presented was a statement from Dr. Larach. He opined in a letter dated June 2, 1989, that appellant, a patient of his since March 1989, suffered from an anxiety disorder "apparently" secondary to PTSD. The letterhead shows Dr. Larach to be a specialist in arthritis and rheumatology. The Court finds no reasonable possibility that this letter would change the result. He had "treated" Mr. Sklar for only two or three months and, presumably, was treating him for arthritis or rheumatism. He is not a specialist in mental illness; he fails to discuss the symptoms upon which he based his opinion; and, finally, his "diagnosis" is far from definite. *See Tirpak v. Derwinski,* 2 Vet.App. 609 (1992). In the context of all the evidence, Dr. Larach's opinion would have little weight. *See Cox, supra; Kates v. Brown,* 5 Vet.App. 93, 95 (1993). There is no reasonable possibility it would affect the outcome.

The decision of the Board is AFFIRMED.