Patricia S. CARROLL, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 93–595.

United States Court of Veterans Appeals.

Argued July 25, 1995.

Decided Aug. 11, 1995.

---

Theresa W. Hajost, with whom Kathryn L. Cervon, Washington, DC, was on the brief, for appellant.

Vito A. Clementi, with whom Mary Lou Keener, Gen. Counsel; Norman G. Cooper, Asst. Gen. Counsel; and Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Judges.

FARLEY, Judge:

This is an appeal from a March 2, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which declined to reopen the appellant's claim for service connection for a low back disorder, finding that new and material evidence had not been submitted. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will vacate the Board decision and remand the matter for further adjudication.

## I.

The appellant served in the U.S. Marine Corps from August 6, 1964, to August 16, 1966. Record (R.) at 16. No abnormal findings regarding her back were noted during her induction physical examination, and she did not report any. R. at 18–21. In a March 1966 treatment record, the examining doctor stated that the appellant had mentioned a knee injury she experienced during high school. R. at 72. In May 1966, she suffered from a number of fainting episodes, and complained that she injured her right shoulder and upper back during one of them. R. at 83–84. The examining doctor's impression was "myositis [secondary] to pulled muscle." R. at 84. Myositis is "inflammation of a muscle." STEDMAN'S MEDICAL DICTIONARY (STEDMAN'S) 1018 (25th ed. 1990). No back or spine problems were noted in her July 1966 separation physical. R. at 87–88. On August 9, 1966, just before her separation, she received emergency treatment for back pain after playing softball, and the doctor diagnosed her with lumbosacral strain. R. at 93. During a follow-up examination four days later, she reported that two years earlier she had been informed that she had a "slipped disc" with a "pinched nerve." R. at 95. The diagnosis was again lumbosacral strain. *Ibid.*

In January 1968, after a pregnancy, the appellant complained of low back pain, and the examining doctor stated, "Back injury in phys[ical] ed[ucation class] in high school; had [lumbosacral] strain then." R. at 107, 127. The same doctor later stated that the appellant had a "back injury in Marine Corps [with lumbosacral] strain" (R. at 1245), and he diagnosed her with acute lumbosacral strain (R. at 107). After getting ice massage treatments, she was listed as asymptomatic. R. at 109. She complained of low back pain again in April, June, and December 1968 and January 1969 (R. at 111–14, 137), and a December 1968 x-ray revealed "rotoscoliosis with compromise L–5, S–1 disk" (R. at 365). Rotoscoliosis is "[c]urvature of the vertebral column by turning on its axis." STEDMAN'S at 1372. The doctor who examined the appellant in December 1968 wrote that she told him that her back pain was "[r]ecurrent since 1958." R. at 112, 148. The doctor who examined her in January 1969 gave his impression as "early degenerative disease due to unequal [weight] bearing" and prescribed flexion exercises. R. at 114.

The appellant complained of back pain several times from 1970 to 1974, although some of the complaints were apparently due to injuries at work. R. at 159, 163, 169, 261,

275–77, 279, 296, 304, 306, 344, 423, 428, 442. An April 1971 clinical record reports, "According to the patient, this is the third episode of low back pain. The first episode was while she was in school. She was performing some physical exercises when she fell on her back, flat. . . . The second episode was just after the delivery of her first child." R. at 276. The appellant underwent an examination in February 1975, and the doctor noted that her back was tender, and that an x-ray showed "a mild scoliosis in the lumbar area convexed to the left. The 5th lumbar interspace is narrowed. There are no arthritic changes." R. at 169. The doctor also stated, "There is not sufficient evidence to consider surgery and I believe her principle disability arises from a mixture of anxiety and depression related to her difficult life situation." R. at 169–70.

In March 1981, the appellant fell at work and severely strained her lumbosacral spine. R. at 229. During a May 1981 examination, the appellant stated that she had had back pain intermittently since 1972, and that she "has had about one back injury a year while working." R. at 232. The doctor stated that she had "a possible lumbar disc syndrome." R. at 233. An x-ray revealed "joint space narrowing at L5–S1." R. at 235. A lumbar myelogram revealed "[b]ony changes at L5–S1 but with no radiographic evidence for disc" (R. at 237), and an epidural venogram showed "narrowing of the venous complex at and just below the L5 vertebral body on the left compatible with change related to a left lateral disc herniation at L5–S1 with some upward extension" (R. at 238). On May 12, 1981, the appellant underwent a laminectomy and disc excision at L5–S1 on the left, and was discharged from the hospital six days later. R. at 241–42.

The appellant applied for service connection in September 1981 for back, leg, and shoulder conditions (R. at 485–88), and underwent a VA examination (R. at 490–99). The examining doctor stated, "There is tenderness and spasm all about the lumbar spine region." R. at 499. An x-ray revealed "moderately severe narrowing of the L5–S1 disc space with sclerosis of the adjacent vertebral end plates and some anterior bony spurring changes[;] all of these changes are suggestive of degenerative disc disease." . R. at 492. Her claim was denied in December 1981. R. at 506–07. The regional office (RO) noted the appellant's pre-service back injury in high school and also the post-service back injuries, and stated that the "[b]ack injury . . . in service [is] considered acute and transitory without evidence of chronic residuals and not related to present disability[y]." *Ibid.* The appellant did not file a timely appeal.

The record contains several references to back problems between 1983 and 1987. In an August 1983 letter, Dr. Michael Davis wrote that he had seen the appellant since July 1982 for numerous problems, including "orthopaedic complaints due to previous laminectomy," and that one of her "chief problems" was the orthopedic complaints. R. at 539. She was involved in a car accident in March 1985, and a doctor who examined her reported that she was suffering from back pain due to the accident. R. at 575. In 1986 she complained of back pain frequently, and many examinations and tests were performed. *See, e.g.,* R. at 709, 711, 815, 830–32, 834–35, 950.

The appellant attempted to reopen her claim in September 1986. R. at 653–56. In June 1987, a VA orthopedic examination was performed on the appellant, and the doctor's impression was "[p]ostoperative residuals herniated intervertebral disk lumbar spine." R. at 965. In a July 1987 rating decision, the RO stated, "Multiple medical reports currently received deal with treatment many years after the fact and do not provide a new and material basis nor new factual basis for reconsideration of [service connection]." R. at 985.

A January 1988 hospital record reported a diagnosis of "degenerative disc disease involving lumbar spinal levels L4–5, L5–S1, and L3–4." R. at 1036. The doctor's examination revealed "diffuse tenderness over the mid and lower spine, along midline well healed surgical incision at level L5–S1." R. at 1037. A VA doctor who performed a September 1988 VA examination also diagnosed degenerative disc disease. R. at 1050.

In October 1988, the appellant underwent a lumbar fusion. R. at 1058–62.

The appellant attempted to reopen her claim in March 1989, and during a hearing held at the RO, she testified about her back injuries during service. R. at 1109–10. She also testified that she still had the "same kind of pain" in her back as she did prior to the October 1988 operation, but that it did not radiate down her leg as badly as it previously had, and that she had been treated for back pain in 1967 at Seymour Johnson Air Force Base. R. at 1113–14. An official from that facility stated, in a response to a request for information, that there were no records of treatment for the appellant there. R. at 1122. A May 1989 rating decision denied her claim, stating that the "[e]vidence is insufficient to establish that the present back cond[ition] is a result of the acute strain in service." R. at 1136.

In May 1989, the appellant visited a VA medical center with complaints that her back hurt just as much as it had prior to her October 1988 operation. R. at 1145–51. An x-ray revealed "some upright elevation of the anterior portion of the L3 vertebral body with subsegmental narrowing of the L2–3 disc space." R. at 1148. The RO confirmed its prior denial of the appellant's claim in December 1989, finding that the recent treatment reports did not "establish a new basis for" service connection. R. at 1177.

The appellant testified at a BVA hearing in March 1990, and stated that she had hurt her knee during high school, not her back. R. at 1199–200. She stated that she injured the knee when her leg had twisted under her back, and suggested that the doctor had erroneously transcribed her account of the pre-service injury. R. at 1200, 1207. On December 12, 1990, the BVA remanded her claim to the RO and instructed it to obtain a copy of a physical examination "in connection with her civilian employment beginning in about September 1966," if one existed, and to get any other medical records for the period from 1966 to 1971. R. at 1217–18.

Medical records were obtained, most of which were either duplicative or cumulative of evidence already in the record. R. at 1224–66. However, four of the records indi-

cated that the appellant complained of back pain in 1967. A May 1967 record indicated that she had "back problems," while another from that same month reported that her "back 'has pinched nerves & numbness into legs' per p[atient]." R. at 1257–58. A July 1967 prenatal and pregnancy clinical record noted a complaint of back pain (R. at 1255), and an August 1967 record indicated that she had "nerve damage—lower back & legs" (R. at 1256). In January 1992, the RO confirmed the denial of the appellant's claim. R. at 1273. Regarding the appellant's reports of back pain in 1967, the RO stated that these complaints were "not supported by med[ical] evid[ence]." Ibid. The RO also stated that the appellant had suffered many back injuries after she left service, that the report from her September 1966 federal employment physical examination and x-rays from 1967 showed her back to be normal, and that the surgeries were performed many years after discharge. R. at 1273–74.

On March 2, 1993, the BVA denied the appellant's claim, finding that she had not submitted new and material evidence sufficient to reopen her claim. R. at 7–8. The Board found that all the records which had been submitted were either duplicative of previous evidence of record, or not material, in that they "only demonstrate that the veteran began to receive treatment for a chronic back disorder several years after her discharge from service and [have] no sufficient bearing on the issue of whether a chronic back disorder was present in service." R. at 10. The Board discredited the appellant's claim that she had not hurt her back while in high school, stating that she did not raise it until more than 20 years after she "first reported . . . in a military medical record that she injured her back in a high school physical education class." R. at 11. The Board also found that this evidence rebutted the presumption that the appellant entered service in sound condition but, perhaps due to its determination that the appellant had not submitted new and material evidence to warrant reopening of his claim, the Board did not address whether the condition it found to have pre-existed service was aggravated during service. Ibid. Regarding whether there

was sufficient evidence of continuity of symptomatology, the Board stated that "the evidence presented for review to the Board since the 1987 rating determination shows that the only chronicity and continuity is from 1974 to present pertaining to the veteran's back disorder, and this was more than five years after discharge from service." *Ibid.*

## II.

■ When a claim is denied by a decision of the RO and the claimant fails to timely appeal that decision by filing a Notice of Disagreement within the one-year period prescribed in 38 U.S.C. § 7105(b)(1), that decision becomes final and the claim may not "thereafter be reopened or allowed." 38 U.S.C. § 7105(c); *see also Person v. Brown,* 5 Vet.App. 449, 450 (1993) (failure to timely appeal an RO decision within one-year period renders the decision final). There is an exception to this rule, however, and it states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see* 38 U.S.C. § 7104(b); *Spencer v. Brown,* 4 Vet.App. 283, 286–87 (1993); *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991); *see also Suttmann v. Brown,* 5 Vet.App. 127, 135–36 (1993) (applying § 5108 provisions for reopening final claims to RO decisions rendered final by operation of § 7105(c)). In making this determination, "consideration must be given to all of the evidence submitted since the last final denial on the merits," not only to those "particular items of evidence received since the most recent denial of reopening." *Glynn v. Brown,* 6 Vet.App. 523, 528–29 (1994).

■ Evidence is new when it is not merely cumulative of other evidence of record. *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). Evidence is material when it is relevant to and probative of the issue at hand and of such weight or significance that there is a reasonable possibility that it would

change the outcome, when viewed in conjunction with the old evidence. *Cox, supra; Sklar, supra; Colvin, supra; Manio, supra.* Pursuant to 38 U.S.C. § 7104, the Board must base its decisions on "all evidence and material of record," and must provide a "written statement of [its] findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C. § 7104(a), (d)(1); *see Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990).

■ Here, the evidence since the last final denial on the merits, which was the unappealed December 1981 RO decision, consists of the appellant's testimony at the March 1989 RO hearing and at the March 1990 BVA hearing and the medical records submitted after the 1981 RO decision, including those obtained pursuant to the December 1990 BVA remand. Regarding the medical records, the majority are either duplicates of records that were obtained prior to the 1981 RO decision or are cumulative of such records, and thus are not new evidence. However, four of the records obtained after the 1990 BVA remand (R. at 1255–58) are new in that they comprise the first medical evidence of record which establishes that the appellant complained of back pain in 1967.

It is not clear from its decision whether the BVA took into account these new records of back pain from 1967 when it concluded that the new evidence, when considered with the evidence previously of record, did not present a "reasonable possibility" that the outcome of the appellant's claim will change. *See Colvin, supra; Cox, supra.* While the BVA did discuss "chronicity and continuity under 38 C.F.R. § 3.303" (R. at 11), it did not specifically address in its reasons or bases whether the 1967 records are pertinent to the issue of continuity of symptoms which, in turn, potentially bears upon the issue of a nexus between in-service back injuries and the appellant's current back condition. *See* 38 C.F.R. § 3.303(b) (1994); *Godfrey v. Brown,* 7 Vet.App. 398, 406 (1995); *cf. Wilson v. Derwinski,* 2 Vet.App. 16, 19 (1991) (noting that 38 C.F.R. § 3.303(b) "requires continuity of symptomatology, not continuity of treatment"). Although this Court reviews

a BVA determination as to new and material evidence de novo, *see Spencer*, 4 Vet.App. at 287; *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992), we have concluded that, under the unique circumstances presented by this record, our review, should further review become necessary, would be better informed if it followed an initial determination by the BVA which is clearly based upon and accounts for all of the evidence of record and which includes the BVA's reasons or bases pertaining to the 1967 records.

## III.

Accordingly, the Court VACATES the March 2, 1993, decision of the BVA and REMANDS the matter for the BVA to determine whether the new evidence, including the 1967 records of complaints of back pain, when considered with all the evidence of record, presents a "reasonable possibility" of changing the outcome. Following the remand, a final decision by the Board "will constitute a new decision which, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of that new decision is mailed to the appellant." *Booth v. Brown*, 8 Vet. App. 109, 112 (1995).