**Leelan W. ASHFORD, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–0384.

United States Court of Veterans Appeals.

Feb. 27, 1997.

Michael P. Horan and Linda E. Blauhut, Washington DC, were on the briefs, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Mary Ann Flynn, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

NEBEKER, Chief Judge:

The appellant, Leelan W. Ashford, appeals a May 6, 1994, Board of Veterans' Appeals (Board or BVA) decision not to reopen his claim for service connection for a lung disorder as a residual of asbestos exposure. After consideration of the record on appeal and the briefs of the parties, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

The appellant served on active duty in the U.S. Navy from August 1967 to December 1968. Record (R.) at 22, 24. No pertinent abnormalities are noted in his service medical records or on his discharge physical examination. R. at 26–42. In July 1975 he filed a claim seeking service connection for nerves, head injury residuals, arthritis, and a broken nose. R. at 17–20. He was awarded service connection for residuals of the nose injury, hypertension, and a laceration scar to his forehead, but those disabilities were rated at zero percent. R. at 59–60. In March 1976, Mr. Ashford was awarded non-service-connected pension. R. at 65–66. In January 1985, erroneously believing he was service connected for bronchitis, he submitted a Statement in Support of Claim requesting an increased evaluation for that condition. R. at 68. The next month, the Regional Office (RO) informed him that he was not service connected for bronchitis, but that if he wished to file a claim for that condition, he needed to submit medical evidence demonstrating that the condition had existed during his service, or from within one year of service discharge. R. at 71. The veteran submitted an insurance form completed by his employer which reflected that the veteran had missed one day of employment in May 1978 for a lung problem (R. at 85), and an October 1985 VAMC Amarillo hospital report (R. at 87). The hospital report revealed that Mr. Ashford had a bronchoscopy performed in response to complaints of a cough productive of white sputum for the past 15 years. *Ibid.* The report also indicates that he had been admitted in January 1985 with similar complaints, and that a bronchoscopy with washings was also done at that time. *Ibid.* The assessment was "[y]oung male with a long histo[r]y of cough associated with pulmonary opacities of as yet undetermined origin." R. at 88. In November 1985 the RO denied the veteran's claim for service connection for "lung condition, chronic bronchitis," based on a lack of any evidence relating his condition to service. R. at 91.

In March 1986, Mr. Ashford's treating physician submitted a statement noting that the veteran had "a history of abnormal chest x-ray showing pulmonary nodules," and was unable to work "due to pneumoconiosis". R. at 94. In May 1986, Mr. Ashford underwent a VA examination and was diagnosed with "chronic pneumonoconiosis with bronchitis and bronchospastic condition associated" and "[p]ersistent bronchitis with severe cough." R. at 107. The RO denied service connection for a "respiratory condition." R. at 117. Later, the treating physician submitted another letter in which he opined that "due to his severe chronic lung disease, which is not going to improve, but get progressively worse, [Mr. Ashford] is unable to engage in any substantially gainful employment." R. at 125. The RO confirmed its prior denial in October 1986, and Mr. Ashford did not appeal that decision. R. at 128, 130.

In April 1990, the veteran requested that his claim for service connection for a lung condition be reopened, and he submitted this second statement from his treating physician:

"Due to his chronic lung disease, etiology uncertain, it is my opinion that Mr. Ashford is unable to do any type of work without becoming extremely short of breath." R. at 146–47. That same month, the RO continued the "prior denial of service-connection for chronic obstructive pulmonary disease." R. at 155. The veteran appealed. R. at 157. A Statement of the Case (SOC) was issued, and in his VA Form 1–9, Appeal to the Board of Veterans' Appeals, he detailed his experiences with congestion and bronchitis while in service and immediately after service. R. at 160, 165–68.

In March 1991, the Board denied service connection because "[t]he July 1986 decision of the agency of original jurisdiction, which denied service connection for a lung disorder, became final, and a new factual basis [was] not presented to demonstrate that a lung disorder was incurred in or aggravated by service." R. at 184. Mr. Ashford sought reconsideration, stating, "I believe this medical condition could possibl[y] be associated [with my] being on board [a Navy] ship. My ship had lots of asbestos." R. at 186. Military records confirmed that "the veteran was stationed aboard a destroyer-tender during his military service and was most likely exposed to some asbestos fibers in the lining of pipes and boilers on board the ship." R. at 261.

In the BVA decision dated January 1993, the appellant's case was remanded for further development, specifically with direction that the RO obtain the pertinent medical records, and that the veteran be examined by a specialist in lung disorders to determine the nature of any lung disease found present. R. at 297. Upon examination in May 1993 pursuant to the BVA remand, the appellant was diagnosed with chronic bronchitis with possible bronchiectasis; "Rule out sarcoid or other granulomatosis; Asbestosis is an unlikely diagnosis." R. at 320–21. In July 1993, following the medical examinations, the RO denied entitlement to service connection for a chronic lung condition secondary to asbestos exposure. R. at 331–33. In September 1993, Mr. Ashford expressed his continued disagreement with that decision, and requested that his case be presented to the chief medical director for an independent expert opinion. R. at 342–43.

On May 6, 1994, the Board issued the decision here on appeal, which concluded that no new and material evidence had been submitted to reopen Mr. Ashford's claim. R. at 1–6. As to Mr. Ashford's contentions regarding his asbestos exposure, the Board stated:

> Even if he had such exposure, the additional evidence is negative for any residual disability. . . . Indeed, the most recent VA examiner stated that the presence of asbestosis was highly unlikely. Although he did diagnose possible bronchiectasis, that was many years after service, and there is no clinical evidence that bronchiectasis existed proximate to service.

R. at 5. The Board further concluded that special attention had been paid to the veteran's claims of asbestos exposure, but that medical examination had failed to provide any evidence that his current lung disorder was related to such exposure, or to his military service. R. at 11.

## II. ANALYSIS

### A. New and Material Evidence

■■■■ The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo. 38 U.S.C. § 7261(a)(1); *Masors v. Derwinski*, 2 Vet.App. 181, 185 (1992).

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which, as this Court stated in *Colvin* [*v. Derwinski*, 1 Vet.App. 171, 174 (1991)] . . . must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown*, 5 Vet.App. 95, 98 (1993). Further, in order to reopen Mr. Ashford's claim for service connection where the issue is whether his current lung condition was incurred in service, competent medical evi-

dence is required. *Caluza v. Brown,* 7 Vet. App. 498 (1995).

Following the March 1991 denial of his claim for service connection for a lung disorder, Mr. Ashford introduced the asbestos causation theory in a statement in support of his claim. R. at 186. Private medical records and the results of VA medical examinations dating from 1968 to 1993 were also submitted. R. at 200–38. The majority of the medical reports were cumulative of evidence already present in the record, and therefore are not new. *Cox,* 5 Vet.App. at 98. A June 1991 chest examination disclosed "[s]oft multiple nodular densities in both lung fields identified 20 Mar[ch] 87 have resolved completely with the chest relatively normal at this time. CONCLUSION: Normal chest." R. at 233. Pulmonary function tests from June 1991 reveal "[s]evere restrictive ventilatory defect with normal total lung capacity and normal diffusion capacity.... The explanation for this abnormality requires clinical correlation. Considerations include infiltrative lung disease, congestive heart failure, respiratory muscle weakness, etc." R. at 234. In May 1993, a VA examination disclosed no evidence of malignancy and concluded that asbestosis was an unlikely diagnosis. R. at 320. As the most recent medical records reveal that Mr. Ashford suffers from chronic bronchitis and possible bronchiectasis, and as no medical evidence relates his condition to his military service, to exposure to asbestos, or to any other service-related factor, the Court holds that no new and material evidence has been presented sufficient to reopen his claim, and the Board did not err in so finding. *Cox,* 5 Vet.App. at 98–99; *see also Evans v. Brown,* 9 Vet.App. 273, 282–84 (1996).

### B. DVB Circular

■ In holding that no new and material evidence was presented to reopen his claim, the Court is called upon to decide whether, by raising the possibility of asbestos exposure in connection with the previously denied claim for a lung condition, Mr. Ashford raised a separate and distinct disability claim that had not been previously considered. Mr. Ashford argues that it is a new claim, and therefore not subject to the reopening

requirements of section 5108 of title 38, United States Code. 38 U.S.C. § 5108 ("If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim."). The Secretary argues that it is not a new claim, but an attempt to reopen the previously denied claim for a "lung disorder," and that no new and material evidence had been presented to comply with the statutory requirements governing reopening.

Mr. Ashford originally filed for entitlement to service connection for bronchitis. R. at 68. He was denied service connection for a "lung condition, chronic bronchitis" (R. at 91), "bronchitis and pneumonoconiosis" (R. at 111), a "respiratory condition" (R. at 112), "severe chronic lung disease" (R. at 128), "chronic obstructive pulmonary disease" (R. at 140), "a lung disorder" (R. at 179), and ultimately "a lung disorder, claimed as a residual of asbestos exposure" (R. at 1). Notwithstanding the nomenclature and varied etiology attributed to his disability, Mr. Ashford's "lung condition," by any name, remains the same; it is "inextricably intertwined" with his previous claim for entitlement to service connection for a lung disorder. *Harris v. Derwinski,* 1 Vet. App. 180, 183 (1991); *see also McGraw v. Brown,* 7 Vet.App. 138, 142 (1994); *but see Ephraim v. Brown,* 82 F.3d 399, 402 (Fed. Cir.1996) (holding "a claim *based on the diagnosis* of a new mental disorder ... states a new claim, for the purpose of the jurisdictional requirement, when the new disorder had not been *diagnosed* and considered at the time of the prior notice of disagreement")(emphasis added).

Mr. Ashford argues that the Department of Veterans Benefits, Veterans' Administration, DVB Circular 21–88–8, Asbestos-Related Diseases (May 11, 1988) [hereinafter DVB Circular], and the VA Adjudication Procedure Manual, M21–1, part VI, para. 7.68 (Sept. 20, 1993) [hereinafter Manual M21–1] warrant special consideration. Appellant's Brief (Br.) at 15–16. The DVB Circular on asbestos-related diseases provides guidelines for rating boards when considering asbestos compensation claims. The

information and instructions in the DVB CIRCULAR were later included in MANUAL M21–1, and recently, VA promulgated amended regulations concerning the respiratory system, to include conditions related to asbestos exposure. Schedule for Rating Disabilities; Respiratory System, 61 Fed.Reg. 46,720 (1996) (to be codified at 38 C.F.R. pt. 4). The DVB CIRCULAR emphasizes particular criteria to be applied to asbestos exposure claims:

> When considering VA compensation claims [for conditions related to asbestos exposure], *rating boards have the responsibility for ascertaining whether or not military records demonstrate evidence of asbestos exposure in service and to assure that development is accomplished to ascertain whether or not there is pre-service or post-service evidence of occupational or other asbestos exposure. A determination must then be made as to the relationship between asbestos exposure and the claimed diseases, keeping in mind the latency and exposure information* [previously listed]. As always, the reasonable doubt doctrine is for consideration in such claims.

DVB CIRCULAR at 3. VA's adoption of a special administrative protocol to be applied to asbestos-related claims, as found in a VA circular, does not support the conclusion that a new etiological theory amounts to a new claim.

In *Spencer v. Brown,* 4 Vet.App. 283, 288–89 (1993), *aff'd,* 17 F.3d 368 (Fed.Cir.1994), the Court held the following:

> When a provision of law or regulation creates a new basis of entitlement to benefits, as through liberalization of the requirements for entitlement to a benefit, an applicant's claim of entitlement under such law or regulation is a claim separate and distinct from a claim previously and finally denied prior to the liberalizing law or regulation. The applicant's latter claim, asserting rights which did not exist at the time of the prior claim, is necessarily a different claim. *See, e.g., Sawyer v. Derwinski,* 1 Vet.App. 130, 133 (1991).

However, the circumstances here are different from those addressed in *Spencer.* The DVB CIRCULAR advises that RO attention be paid to pre- and post-service evidence of exposure to asbestos, and offers guidelines for the claim-development of diseases claimed as a residual of asbestos, "keeping in mind" the distinctive characteristics of that substance. These guidelines do not create a new presumption or a new basis of entitlement to benefits, but rather set forth a process for VA to follow where asbestos exposure creates a possible nexus between a current disability and service. Accordingly, the Court holds that the DVB CIRCULAR did not liberalize the requirements for entitlement to disability benefits, or bestow any rights on VA claimants, and cannot, therefore, satisfy the requirement that new and material evidence be presented.

In *Ennis v. Brown,* 4 Vet.App. 523 (1993), the Court remanded a claim because the BVA failed to analyze entitlement to benefits in light of the DVB CIRCULAR, and because "VA [was] readjudicating the claim for service connection for cause of death on the basis of radiation exposure." *Id.* at 526–27. However, the specific circumstances in that case, which required remand, are not present here. In *Ennis,* the Court determined that in the Board's decision, the DVB CIRCULAR guidelines had not been properly applied and that no special inquiry was made to examine asbestos exposure as a possible nexus between the veteran's cause of death and his military service. *Ibid.* In contrast, the appellant here concedes that "the RO, apparently attempting to comply with the Circular guidelines," took steps to determine whether asbestos exposure affected the veteran's lung disorder. Br. at 6. The holding in *Ennis* does not require the Board to repeat claim-development actions already performed by the RO. Here, while the Board does not expressly mention the DVB CIRCULAR in concluding that the veteran's current respiratory ailments were not related to his asbestos exposure, the decision reveals that the appropriate and relevant steps, as mandated by the DVB CIRCULAR, were taken to ascertain whether the veteran's asbestos exposure was related to his lung disorder:

> In arriving at this decision, the Board has considered the veteran's contentions regarding exposure to asbestos in the Navy.

Even if he had such exposure, the additional evidence is negative for any residual disability. Although X-rays taken in the mid–1980's revealed nodular densities in the lungs, subsequent workups, including a biopsy in October 1985, were negative for any associated disease process. Those nodules apparently resolved by the early 1990's, as X-rays taken during the VA examinations, showed a normal chest and lungs. Indeed, the most recent VA examiner stated that the presence of asbestosis was highly unlikely. Although he did diagnose possible bronchiectasis, that was many years after service, and there is no clinical evidence that bronchiectasis existed proximate to service.

R. at 11; *see, e.g., Suttmann v. Brown,* 5 Vet.App. 127, 138 (1993) ("In developing and adjudicating the claim ... the Board must ensure compliance with VA's rules for adjudication."). While the Board did not specifically reference the DVB CIRCULAR—and it certainly should have done so and discussed the RO's compliance with the CIRCULAR's claim-development provisions—a review of the record demonstrates that the claim was developed and adjudicated fully in keeping with the substance of both the DVB CIRCULAR and the applicable regulations. Accordingly, the Court holds that Mr. Ashford's assertion that asbestos exposure caused his present disability constitutes an attempt to reopen the previously denied claim of entitlement to service connection for a lung disorder, and further, that no new and material evidence has been presented to initiate a readjudication of that claim.

### III.  CONCLUSION

The Board's decision of May 6, 1994, is AFFIRMED.