Citation Nr: 1504685 
Decision Date: 01/30/15 Archive Date: 02/09/15

DOCKET NO. 07-22 179 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUE

Entitlement to service connection for a low back disorder manifested by lumbar degenerative joint disease. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

Amanda Christensen, Associate Counsel


INTRODUCTION

The Veteran served on active duty in the United States Army from October 1985 to October 1988. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2006 rating decision of the Department of Veterans Affairs (VA) Regional Office in New York, New York (RO). In that rating decision, the RO denied the claim for entitlement to service connection for a low back disorder. 

This appeal initially came to the Board of Veterans' Appeals (Board) from an April 2006 decision of the Department of Veterans Affairs (VA) Regional Office in New York, New York (RO). In November 2011, the Board denied the Veteran's claim. The Veteran appealed this decision to the Court of Appeals for Veterans Claims (Court). In April 2013, the Court affirmed the Board's decision to the extent that it denied service connection for a lumbar strain but vacated and remanded the Board's decision to the extent that the decision denied service connection for lumbar degenerative joint disease. In July 2014 the Board remanded the issue of entitlement to service connection for lumbar degenerative joint disease to the AOJ. The claim has since been returned to the Board for further appellate action. The Board is satisfied there was substantial compliance with its remand orders. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999); Stegall v. West, 11 Vet. App. 268, 271 (1998). 


FINDINGS OF FACT

1. There is no evidence of a chronic low back disorder shown during the Veteran's period of service, or within in the first year thereafter. 

2. The preponderance of the evidence is against a finding that any current low back disorder to include lumbar degenerative joint disease is etiologically related to his period of service, to include any inservice low back injury.






CONCLUSION OF LAW

The criteria for service connection for a low back disorder, to include as manifested by lumbar degenerative joint disease, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duty to Notify and Assist

As provided for by the Veterans Claims Assistance Act of 2000 (VCAA), the United States Department of Veterans Affairs has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a).

VA is required to notify the claimant of the information and evidence not of record that is necessary to substantiate the claim. VA will inform the Veteran of the type of information and evidence that VA will seek to provide, and of the type of information and evidence, the claimant is expected to provide. 38 C.F.R. § 3.159(b). VA must provide such notice to the claimant prior to an initial unfavorable decision on a claim for VA benefits by the agency of original jurisdiction (AOJ), even if the adjudication occurred prior to the enactment of the VCAA. See Pelegrini v. Principi, 18 Vet. App. 112, 119-120 (2004). These VCAA notice requirements apply to all elements of a claim for service connection, so VA must specifically provide notice that a disability rating and an effective date will be assigned if service connection is awarded. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

Here, VA sent a letter to the Veteran in February 2006 that addressed some of the notice elements concerning his claim for service connection for a low back disorder. The letter informed the Veteran of what evidence is required to substantiate the claims, and apprised the Veteran as to his and VA's respective duties for obtaining evidence. In an October 2010 notice letter, VA informed the Veteran how it determines the disability rating and the effective date for the award of benefits if service connection is to be awarded. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

Although the October 2010 notice was sent after the initial adjudication, the Board finds this error non-prejudicial to the Veteran. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005). In this regard, the notice provided in the October 2010 letter fully complied with the requirements of 38 U.S.C. § 5103(a), 38 C.F.R. § 3.159(b), and Dingess, and after the notice was provided the case was recently re-adjudicated and an August 2011 supplemental statement of the case was provided to the Veteran. See Pelegrini, 18 Vet. App. 112; Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (a (supplemental) statement of the case that complies with all applicable due process and notification requirements constitutes a re-adjudication decision).

In light of the above, the Board finds that all notices required by VCAA and implementing regulations were furnished to the veteran and that no useful purpose would be served by delaying appellate review to send out additional VCAA notice letters.

In addition to its duty to notify, or inform, the Veteran with regard to his claim, VA also has a duty to assist the Veteran in the development of the claim. This duty includes assisting the Veteran in the procurement of service treatment records and records of pertinent medical treatment since service, and providing the Veteran a medical examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

In this case, VA has made reasonable efforts to obtain any available pertinent records as well as all relevant records adequately identified by the Veteran. VA also has obtained medical opinions, dated in April 2006, April 2011, and October 2014 on the nature and etiology of the Veteran's claimed low back disorder. The Board finds that the medical opinions as a whole are adequate for adjudication purposes. See Barr v. Nicholson, 21 Vet. App. 303 (2007). 

The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. See Bernard v. Brown, 4 Vet. App. 384 (1993).

For the foregoing reasons, the Board therefore finds that VA has satisfied its duty to notify and its duty to assist pursuant to the VCAA. See 38 U.S.C.A. §§ 5102 and 5103; 38 C.F.R. §§ 3.159(b), 20.1102; Pelegrini, 18 Vet. App. 112; Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303(a). 

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. See 38 C.F.R. § 3.303(b). The chronicity provision of 38 U.S.C.A. § 3.303(b) is applicable where the evidence, regardless of its date, shows that the Veteran had a chronic condition in service or during an applicable presumptive period and that he still has such condition. Such evidence must be medical unless it relates to a condition as to which, under the Court's case law, lay observation is competent. Savage v. Gober, 10 Vet. App. 488, 498 (1997). 

In addition, certain chronic diseases, including arthritis, may be presumed to have been incurred during service if they become manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. Here, however, arthritis was not shown until 2006, which comes many years after service, and service connection may not be presumed.

Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

To prevail on the issue of service connection, generally, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and 
(3) evidence of a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C.A. § 7104(a); Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). If there is at least an approximate balance of positive and negative evidence regarding any issue material to the claim, the claimant shall be given the benefit of the doubt in resolving each such issue. 38 U.S.C.A. § 5107; Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); 38 C.F.R. §§ 3.102. On the other hand, if the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365.

In this case, the Veteran seeks entitlement to service connection for a low back disorder, to include one manifested by lumbar degenerative joint disease. He asserts that his current diagnosed disorder, chronic lumbar strain with degenerative arthritis, was incurred during his period of service. The Veteran reports that he injured his back while playing basketball in service, and that he has continued to experience symptoms of back pain since then. 

A review of the service treatment records show that the Veteran first sought treatment in January 1987 for low back problems. That treatment record shows the Veteran presented with complaints of low back pain on the right side and he reported that he had injured his back while playing basketball. Physical examination revealed tenderness on palpitation over the right lower ribs and muscle tightness. An assessment of probable muscle strain was provided. A February 1987 treatment record shows the Veteran again presented with complaints of right side low back pain following a game of basketball three days earlier. Physical examination revealed tightness of the right paraspinal muscles and reduced range of motion. A diagnosis of right paraspinal muscle strain was provided. 

Subsequent service treatment records do not show any further low back problems until August 1988. An emergency treatment record shows that the Veteran presented with neck pain and low back pain after falling hard on his back while playing basketball. Physical examination revealed tenderness involving the cervical spine and lower posterior thoracic spine. X-ray of the cervical spine revealed displacement of C-5. The Veteran was referred for an orthopedic consultation. 

The report of an August 1988 orthopedic consultation shows that the Veteran was assessed with a central back contusion and mild degenerative arthritis of the cervical spine. Further abnormal findings involving the cervical spine were noted, but no abnormalities involving the low back were recorded. 

The report of an examination prior to separation and an associated report of medical history are not available. The record does, however, contain the report of an April 1991 examination for enlistment into the Army National Guard. That examination report shows that the Veteran's spine was evaluated as normal and no abnormalities involving the lumbar spine were recorded. On the associated report of medical history, the Veteran specifically denied any history of recurrent back pain. 

The first post-service evidence indicative of any back problems comes in 2001, more than a decade after the Veteran's separation from service. Records from the Department of Corrections, Mid-State Correctional Facility (DOC) show that the Veteran sought treatment for musculoskeletal pain in November 2001. The DOC record does not identify the location of the musculoskeletal pain, but the Veteran has reported that he sought treatment for back problems at the DOC medical facility. 

The next post-service evidence of back problems comes in 2006 when the Veteran initiated this claim. Subsequent VA and private treatment records show that the Veteran sought treatment for low back pain with intermittent exacerbation of symptomatology. The report of a 2006 VA MRI shows possible findings of facet arthropathy at L4-L5. 

The record next contains five medical statements that touch and concern the issue of whether the Veteran has a current low back disorder that is etiologically related to his period of service. Three medical opinions come from VA examination reports and the other two medical opinions are contained in private treatment records. 

The first medical opinion of record comes from the report of an April 2006 VA examination. That examination report shows that the Veteran complained of low back pain since 1987, with intermittent remission of symptoms. The examiner noted that a review of the service treatment records showed the Veteran sought treatment for back problems in February 1987 and August 1988 related to injuries incurred while playing basketball. The Veteran reported that he treated his low back problems with Ibuprofen as needed. Physical examination revealed evidence of mild muscle spasms and moderate tenderness with full range of motion. X-ray film showed no evidence of significant degenerative changes and the Veteran was assessed with an essentially normal lumbar spine. The examiner provided a diagnosis of chronic acute low back strain with normal examination. The examiner opined that "it was less likely than not that the [V]eteran's back symptoms are related to injury of 1987." No rational was provided in support of his medical statement. 

The next medical opinion comes from a November 2006 private medical statement from K.S.N., doctor of chiropractic. Dr. N. stated that "[a]ccording to the [Veteran], he fell down while playing basketball February 26, 1987 and injured his low back area." Dr. N. noted that the Veteran denied any prior low back conditions and he reported receiving treatment "on and off" for his low back since then. Physical examination revealed findings consistent with diagnoses of subluxation complex-lumbar, lumbar sprain/strain, spasms, and lumbago. X-ray film revealed mild degenerative changes. Dr. N. stated that it was his opinion that the Veteran's lumbar sprain/strain was causally related to his inservice back injury in February 1987. Dr. N. noted that the Veteran has had treatment for similar symptoms since then, and that the Veteran has positive objective and subjective findings that verify the permanency of his condition. Dr. N. concluded that the Veteran's "current complaints must be causally related, to some extent, to his February 26, 1987 injury." 

A December 2006 private treatment record from Dr. P., MD, contains the third medical statement of record. In that treatment record, Dr. P. noted that the Veteran reported a history of low back injury in 1988 while playing basketball and he further reported that he experiences exacerbation of low back pain with activities. The Veteran reported that the last exacerbation episode occurred about a month before. Physical examination revealed abnormalities involving the muscles of the lumbar spine. Dr. P. stated the following: 

"After reviewing consult from ortho 1988 [and] xray report from [August] 1988 [and with] interviewing patient it could be possible that the chronic low back pain [with] occasional exacerbations could be linked to initial injury as per patient today in August 12, 1988. Given impact of cervical [and] thoracic [and] lumbar spine from fall as well persist wear [and] tear. However [Veteran] has had "normal" activities between flares." 

Dr. P. also noted that Dr. N.'s medical notes were reviewed in conjunction with her assessment. 

The next medical opinion of record comes from the report of an April 2011 VA examination. The examiner noted the Veteran's inservice history of back problems and his reported history of back problems since then. Physical examination revealed findings of tenderness and reduced range of motion of the lumbar spine. X-ray film showed evidence of mild degenerative changes. Diagnoses of chronic lumbar strain and degenerative joint disease were provided. Based on a review of the claims folder and the findings from the examination, the examiner opined that the Veteran's chronic lumbar strain was less likely than not caused or the result of his period of service. The examiner concluded the medical evidence did not show any subsequent treatment of low back problems after February 1987, when the Veteran was treatment for "right paraspinal muscle spasms", until 2001. Treatment in August 1988 was for problems involving the upper back. The examiner also noted the medical findings contained in the private medical records from Drs. N. and P., but the examiner concluded that those medical statements were made without the benefit of review of the entire claims folder. 

In October 2014 the April 2011 VA examiner conducted another examination of the Veteran and opined that the Veteran's degenerative joint disease is also not related to his service. The examiner stated that Veteran's current lumbar x-ray findings are related to aging. The examiner noted that the Veteran denied recurrent low back pain on a 1991 report of medical history and that the Veteran reported a fall with headache and muscle ache in 2002.

Based on a review of the evidence, the Board finds that service connection for any low back disorder, to include degenerative joint disease, is not warranted. Here, the record shows that the Veteran sought treatment for low back problems during his period of service, and that he has reported experiencing low back pain since service. Regardless, the weight of the competent medical evidence is against a link between the Veteran's current diagnosed low back disorder and his period of service. 

The Board has considered the Veteran's reports that he has experienced low back pain since his period of service. While the Veteran as a lay person is not competent to make a diagnosis or to provide a medical etiology opinion for symptoms, he is certainly competent to discuss the continuity of his symptoms. That said, the Board finds that the Veteran's allegations are simply not credible. See Caluza v. Brown, 7 Vet. App. 498 (1995). The Board notes that it must consider both the competency and the credibility of the Veteran's lay contentions. Specifically, statements the Veteran made within a few years after his separation from active service fly in the face of his current allegations. In the April 1991 medical history report completed by the Veteran, he specifically denied ever having recurrent back pain or bone, joint, or other deformity. His response indicates no ongoing back problems and contradicts his current contentions that he has had low back problems since service. Additionally, statements discussing a history of back trouble since service are not supported by any record of treatment for back problems over the decade between his separation in 1988 and the first indication of any post-service back problems in 2001. The conflict between the 1991 response and the recent allegations, and the lack of treatment for back problems for more than a decade after separation, are factors that weigh against the credibility of his assertions. Based on the foregoing, the Board finds that the Veteran is not credible to the extent that he reports of continuity of symptomatology since his period of service, and the Board must look to the other factors, such as the medical evidence, when considering the onset of his current diagnosed disorder.

The record also does not show a continuity of symptomatology (or treatment) for any low back disorder, following separation from the Veteran's service in 1988 until 2001. This medical evidence comes well beyond the first year after the Veteran's discharge from his period of service. 38 C.F.R. § 3.303. This lengthy period without treatment for any related conditions is a factor the Board has considered. 

Further, the weight of the most probative medical opinion of record is against a link between the Veteran's current diagnosed low back disorder and his period of service, to include the in-service low back complaints. As noted above, the record contains five medical statements that touch and concern the issue of whether the Veteran's current low back disorder is related to his period of service. 

It is the Board's duty to assess the credibility and probative value of evidence, and, provided that it offers an adequate statement of reasons or bases, the Board may favor one medical opinion over another. Owens v. Brown, 7 Vet. App. 429, 433 (1995). Greater weight may be placed on one physician's opinion over another depending on factors such as reasoning employed by the physicians and whether or not and the extent to which they reviewed prior clinical records and other evidence. Gabrielson v. Brown, 7 Vet. App. 36 (1994). The probative value of a medical opinion is generally based on the scope of the examination or review, as well as the relative merits of the expert's qualifications and analytical findings, and the probative weight of a medical opinion may be reduced if the examiner fails to explain the basis for an opinion. Sklar v. Brown, 5 Vet. App. 140 (1993). As true with any piece of evidence, the credibility and weight to be assigned to these opinions are within the province of the Board as adjudicators. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). 

Here, the Board finds that the medical nexus opinion of the examiner who conducted the April 2011 and October 2014 VA examinations is the most probative opinion on this issue. In April 2011 the examiner opined that the Veteran's chronic lumbar strain is less likely than not related to his period of service and in October 2014 the examiner opined that the Veteran's degenerative disc disease is less likely than not related to his period of service. The examiner concluded the service treatment records only show one incident of low back problems in February 1987 (for "right paraspinal muscle spasms,") and that there was no subsequent medical evidence of possible treatment for any low back problems until 2001. The examiner indicated that the lack of treatment for low back complaints for more than a decade after the Veteran's separation from service weighed against a medical nexus. The examiner further stated that lumbar x-ray findings are related to aging. 

Similarly, the April 2006 VA examiner found that the Veteran's current low back disorder was not related to the 1987 low back injury, but the examiner failed to provide a rational in support of his medical conclusion. This VA examiner's medical opinion is afforded limited probative value without a medical statement that provides a rational to support his medical conclusion. 

The two medical statements that support the Veteran's claim come from the 2006 private medical statements from Drs. N. and P. In his November 2006 letter, Dr. N. provided a positive medical opinion between the Veteran's current symptomatology and his inservice injury based on the Veteran's reported history. As shown above, the Board considers the Veteran an unreliable historian of his low back problems. 

There is no indication his November 2006 statement that Dr. N. based his medical opinion on any separate information that verified the Veteran's contention. While the Veteran asserts that Dr. N.'s reviewed his service treatment records in conjunction with medical statement (see August 2011 statement from the Veteran), in his 2006 letter, Dr. N. specifically stated that his knowledge of the Veteran's medical history was "according to the patient." There is no indication in the file showing that Dr. N. reviewed any of the service treatment records prior to rendering his medical opinion. Accordingly, the Board affords Dr. N.'s medical statement low probative weight. 

Dr. P.'s December 2006 private medical statement is also of low probative value. Dr. P. concluded that "it could be possible that the [Veteran's] chronic low back pain [with] occasional exacerbations could be linked to initial injury" in service. The Board finds that Dr. P.'s opinion regarding the possibility that the Veteran's low back disorder was incurred during service is speculative in nature. Service connection may not be based on a resort to speculation or remote possibility, such as indicated by that opinion. 38 C.F.R. § 3.102. Here, Dr. P.'s medical statement is speculative in nature and does not provide a direct medical link between the Veteran's current low back disorder and his inservice injury. 

The Board notes that findings of a medical professional are medical conclusions that the Board cannot ignore or disregard. However, the Board is free to assess medical evidence and is not obligated to accept a physician's opinion. Therefore, after a careful review of the Veteran's claims file the Board finds that the April 2011/October 2014 VA examiner's negative medical nexus opinions are the most probative in this matter and weigh heavily against the Veteran's claim.

In sum, although a review of the service treatment records shows the Veteran complained of low back problems during his period of service, the weight of the medical evidence does not show that the current low back disorder, to include lumbar degenerative joint disease, is related to his service. Conversely, it is against such a finding. The Board finds that the preponderance of the evidence is against the claim. As such, the benefit of the doubt rule is not applicable here. See 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The claim must be denied.



ORDER

Service connection for a low back disorder, to include lumbar degenerative joint disease, is denied. 



____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs