Citation Nr: 1761233 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 10-43 357 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Honolulu, Hawaii


THE ISSUES

1. Entitlement to service connection for residuals of bladder cancer, to include as due to asbestos exposure. 

2. Entitlement to service connection for prostate cancer, to include as due to asbestos exposure. 

3. Entitlement to service connection for a lumbar spine condition, to include as secondary to service-connected hepatitis C. 

4. Entitlement to service connection for a left knee condition, to include as secondary to service-connected hepatitis C. 

5. Entitlement to service connection for a right knee condition, to include as secondary to service-connected hepatitis C. 




REPRESENTATION

Appellant represented by: Shannon K. Holstein, Esq.


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

Christopher M. Collins, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1976 to November 1979. This matter is before the Board of Veterans' Appeals (Board) on appeal from March 2009 and August 2014 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) located in Honolulu, Hawaii. 

In February 2014, the Board denied the issue of service connection for residuals of bladder cancer. The Veteran appealed that denial to the United States Court of Appeals for Veteran Claims (Court), which issued a Joint Motion for Remand (JMR) in September 2014 vacating, in part, the decision regarding the issue of service connection for bladder cancer and remanding that issue to the Board. 

In November 2014, the Board denied the issue of service connection for prostate cancer. The Veteran appealed that denial to the United States Court of Appeals for Veteran Claims (Court), which issued a May 2016 JMR vacating, in part, the decision regarding the issue of service connection for prostate cancer and remanding that issue to the Board. 

This case was last before the Board in December 2016, whereupon it was remanded to the RO for further development of the record. The RO issued a June 2017 supplemental statement of the case continuing the denial of the claims of service connection for residuals of bladder cancer and for prostate cancer. Thereafter, the RO issued a September 2017 statement of the case continuing the denial of the claims of service connection for a lumbar spine condition, a left knee condition and a right knee condition. All five claims were then returned to the Board for its adjudication. 

The Veteran testified in September 2011 at the RO before the undersigned Veterans Law Judge (VLJ) sitting in Washington, D.C. 



FINDINGS OF FACT

1. The competent medical evidence does not demonstrate that the Veteran has residuals of bladder cancer that are attributable to the Veteran's active service or any incident of service, to include as due to in-service asbestos exposure.

2. The competent medical evidence does not demonstrate that the Veteran has prostate cancer that is attributable to the Veteran's active service or any incident of service, to include as due to in-service asbestos exposure.

3. The competent medical evidence does not demonstrate that the current lumbar spine condition is attributable to the Veteran's active service or any incident of service, to include service-connected hepatitis C. 

4. The competent medical evidence does not demonstrate that the Veteran has a left knee condition.

5. The competent medical evidence does not demonstrate that the current right knee condition is attributable to the Veteran's active service or any incident of service, to include service-connected hepatitis C. 
CONCLUSIONS OF LAW

1. The criteria for service connection for residuals of bladder cancer have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.303 (2017). 

2. The criteria for service connection for prostate cancer have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.303 (2017).

3. The criteria for service connection for a lumbar spine condition have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.303, 3.310 (2017); Allen v. Principi, 237 F.3d 1368 (Fed. Cir. 2001).

4. The criteria for service connection for a left knee condition have not been met. 38 U.S.C. §§ 1110, 1112, 1113, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303 (2017). 

5. The criteria for service connection for a right knee condition have not been met. 38 U.S.C. §§ 1131, 5107 (2012); 38 C.F.R. §§ 3.303, 3.310 (2017); Allen v. Principi, 237 F.3d 1368 (Fed. Cir. 2001).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

As a preliminary matter, the Board has reviewed the claims file and finds that there exist no deficiencies in VA's duties to notify and assist that would be prejudicial and require corrective action prior to a final Board determination. See 38 U.S.C. §§ 5103, 5103A; 38 C.F.R. § 3.159; see also Bryant v. Shinseki, 23 Vet. App. 488 (2010) (regarding the duties of a hearing officer); Mayfield v. Nicholson, 20 Vet. App. 537 (2006) (corrective action to cure a 38 C.F.R. § 3.159(b) notice deficiency); Pelegrini v. Principi, 18 Vet. App. 112, 120 (2004) (timing of notification).


The Board also notes that, to the full extent possible, VA complied with all prior remand instruction requests, and there exist no deficiencies in VA's duties to notify and assist in that regard. See Stegall v. West, 11 Vet. App. 268 (1998) (a remand by the Board confers upon the claimant, as a matter of law, the right to compliance with the remand order); but see D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (it is only substantial compliance, rather than strict compliance, with the terms of a remand that is required). 

Legal Criteria

Service connection for VA compensation purposes will be granted for a disability resulting from disease or personal injury incurred in the line of duty or for aggravation of a preexisting injury in the active military, naval or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Establishing that a purported injury or disease is connected to service, such that a veteran is entitled to potential benefits, requires competent and credible evidence of the following three things: (1) a current disability; (2) in-service incurrence or aggravation of a relevant disease or an injury; and (3) a causal relationship, i.e. a nexus, between the disease or injury in service and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009). 

The Board, as fact finder, must determine the probative value or weight of the admissible evidence. Washington v. Nicholson, 19 Vet. App. 362, 369 (2005) (citing Elkins v. Gober, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the Board")). VA must give due consideration to all pertinent medical and lay evidence in a case where a veteran is seeking service connection. 38 U.S.C. § 1154(a). When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the veteran. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 
Residuals of Bladder Cancer

The Veteran asserts that he developed bladder cancer after service as a direct result of his exposure to asbestos in service, and that he is entitled to service connection for residuals of the bladder cancer. Specifically, he contends that his duties as a boiler mechanic required that he come into contact with asbestos on a regular basis and that he did not use any protective gear while carrying out those duties. 

A review of the Veteran's service treatment records do not show that the Veteran was ever diagnosed with bladder cancer in service. He was evaluated as having no abnormalities on his November 1979 discharge examination. The Board notes that in October 1977 the Veteran sought treatment for symptoms of burning urination with green discharge; however, the impression was that he had contracted a sexually transmitted infection. Thereafter, in July 1978, he again complained of discharge with burning during urination, which was also diagnosed as a sexually transmitted infection. 

Post-service, treatment records from a Dr. R.L. indicate that the Veteran was diagnosed with bladder cancer in 1995 and underwent surgery to remove a tumor in his bladder that same year. Prior to this surgery, the Veteran underwent a different surgery to remove gallstones in May 1995 after three years of experiencing epigastric distress. 

In an April 2009 statement, a W.Z. identified himself as fellow servicemember who service aboard the same ship as the Veteran when he was in service. According to W.Z. he worked along with the Veteran in the fire room operations where the two of them were constantly exposed to asbestos with little or no protection. 

During a March 2010 hearing before a decision review officer at the RO, the Veteran first set forth the theory that his bladder cancer could be related to his history of asbestos exposure in service. He stated that he would get asbestos dust all over his clothing while working with boilers and that it would remain on his clothing and his body despite washing both thoroughly. 

The Veteran was afforded a VA examination to evaluate the nature and etiology of his residuals of bladder cancer in June 2010. He acknowledged that he had surgery previously to remove a tumor in his bladder and that periodic checks had shown that the bladder cancer was in remission. Testing confirmed that the bladder cancer was not active and thus had no effect on the Veteran's usual occupation and daily activities. As for the whether the bladder cancer was due to asbestos exposure in service, the examiner stated that medical literature suggested that the amount of asbestos exposure needed to cause bladder cancer would also result in asbestosis. Referring to a radiologic examination of the chest that showed no abnormalities, the examiner concluded that since there was no evidence of asbestosis it was less likely than not that the bladder cancer was due to asbestos exposure. 

A November 2010 outpatient record from a Dr. H.W. indicates that the Veteran was referred to him from his primary treating physician in order to elicit an opinion regarding the possible connection between bladder cancer and asbestos exposure. Although Dr. H.W. did not set forth any formal opinion, they did note that a quick review of the internet showed that epidemiologic studies had not clearly established any relationship between asbestos exposure and non-respiratory cancers. Subsequent outpatient records from Dr. H.W. show that the Veteran had continued to monitor his bladder cancer. 

During the September 2011 hearing, the Veteran confirmed that he was diagnosed with bladder cancer after service and that his cancer had been in remission since surgery. He reported that he was not issued any protective equipment when he worked with boilers while in service and that he would be exposed to significant amounts of asbestos dust whenever he carried out his duties as a boiler technician. He also stated that in 1979 while still in service he experienced difficulty urinating and noticed blood in his urine on a few occasions. 

Pursuant to the Board's November 2014 remand, the claims file was forwarded to a qualified examiner in January 2015 for the purpose of eliciting an opinion as to the etiology of the bladder cancer. After a thorough review of the claims file, the examiner found that it was less likely than not that the bladder cancer was incurred in or otherwise due to service. In support thereof, the examiner noted that there was no diagnosis of bladder cancer in service and also highlighted the fact that over 15 years passed between the Veteran's discharge from service and his diagnosis with bladder cancer in 1995. The examiner further opined that it was less likely than not that the bladder cancer was due to in-service asbestos exposure on the grounds that medical literature did not support a finding that asbestos exposure resulted in bladder cancer. 

The Veteran has submitted several more private medical records, and the claims file contains copious VA treatment records, all of which indicate that the Veteran has continued to monitor his bladder for signs of recurrence and which have confirmed that his cancer continues in remission. None of these records contain any evidence which would suggest that the Veteran's bladder cancer is attributable to service, to include as due to asbestos exposure. 

Upon consideration of the record, the Board finds that the preponderance of the evidence is against a determination that the Veteran's residuals of bladder cancer are attributable to his service, to include his exposure to asbestos. To begin, the evidence does not show, and the Veteran does not assert, that he developed bladder cancer while in service. Although there is some indication that the Veteran experienced symptoms that could be attributed to bladder cancer, the fact remains that the Veteran's symptoms of urinary discomfort and discharge were diagnosed as being due to a sexually transmitted infection and prostatitis. Accordingly, service connection on a direct basis pursuant to 38 C.F.R. § 3.303(a) is not warranted. 

The Veteran's assertion that he was exposed to asbestos dust while working as a boiler technician in service is fully credible. Layno v. Brown, 6 Vet. App. 465 (1994). However, there is no evidence in the record which indicates that he possesses the training or credentials to competently conclude that his exposure to asbestos dust led to the development of bladder cancer after service. Jandreau v. Nicholson, 491 F.3d 1372 (Fed. Cir. 2007). Such a medical determination is made through the use of clinical evaluations by a medical professional with the specialized education, training, or experience to offer an opinion regarding the etiology of a disease. 

The Veteran's contentions must be considered in light of the two medical opinions from VA examiners who have evaluated the Veteran's claim. Although the June 2010 VA examiner did not specifically opine as to whether the bladder cancer was attributable to service, they did find that it was less likely than not that the cancer was attributable to in-service asbestos exposure, and supported that opinion with reference to medical literature and the Veteran's history of treatment for bladder cancer. The January 2015 VA examiner similarly found that it was less likely than not that the cancer was attributable to in-service asbestos exposure, and further found that it was less likely than not that the cancer was attributable to service in total. Both of those opinions from the January 2015 VA examiner were supported by a review of the record and reference to medical literature. In short, as the medical opinions in this matter had a sufficient rationale, the Board finds that they are highly probative of the issue of whether the bladder cancer residuals are attributable to service, to include as due to in-service asbestos exposure. Sklar v. Brown, 5 Vet. App. 140 (1993) (the probative value of a medical opinion is based on the scope of the examination or review, as well as the relative merits of the analytical findings). 

The Veteran may still be entitled to service connection for residuals of bladder cancer if all of the evidence establishes that the condition was incurred in service. 38 C.F.R. § 3.303(d). However, in recognition of the absence of competent evidence tending to show that the Veteran's bladder cancer is attributable to asbestos exposure, and in light of the highly probative VA examiner opinions, the Board finds that the preponderance of the evidence weighs against a finding that the Veteran's bladder cancer residuals are otherwise attributable to service, to include as due to exposure to asbestos. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Service connection for residuals of bladder cancer under 38 C.F.R. § 3.303(d) is denied, and as such the Veteran's claim of entitlement to service connection for residuals of bladder cancer in total must be denied. 

As the preponderance of the evidence is against the Veteran's claim of service connection for residuals of bladder cancer, the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b).

Prostate Cancer

The Veteran asserts that he was diagnosed with prostate cancer after service as due to exposure to asbestos while in service and that therefore he is entitled to service connection for prostate cancer. Specifically, he contends that his duties as a boiler mechanic required that he come into contact with asbestos on a regular basis and that he did not use any protective gear while carrying out those duties. 

A review of the Veteran's service treatment records shows that the Veteran was treated for chronic prostatitis during service. In addition, as discussed previously, the Veteran sought treatment for symptoms of burning urination with green discharge; however, the impression was that he had contracted a sexually transmitted infection. Thereafter, in July 1978, he again complained of discharge with burning during urination, which was also diagnosed as a sexually transmitted infection. Nevertheless, he was evaluated as having no abnormalities on his November 1979 discharge examination, and no other records document that he experienced any symptoms related to prostate cancer in service. 

Post-service, a September 2007 letter prepared by a Dr. E.T. indicates that the Veteran was referred to him in August 2007 after the Veteran's primary physician found a nodule involving the right prostatic lobe on a July 2007 MRI. According to Dr. E.T., the Veteran then underwent a cystoscopy in September 2007 which found no significant abnormalities. It was Dr. E.T.'s opinion that the Veteran would require periodic monitoring of his prostate in the future. Subsequent treatment records from the Veteran's primary physician, a Dr. R.S., show that the Veteran did indeed continue to monitor his prostate periodically, and that the treatment of the cancer included seed implantation, which was considered a success. 

The Veteran was afforded a VA examination to evaluate the nature and etiology of his prostate cancer in June 2010. He reported that he had been periodically monitoring his prostate since the nodule was first discovered in 2007 and that there had been no evidence that the nodule had developed into cancer. Testing confirmed that the prostate nodule was not active and thus had no effect on the Veteran's usual occupation and daily activities. As for whether the prostate nodule was due to asbestos exposure in service, the examiner stated that medical literature had established no link between prostate nodules and asbestos exposure. 

During the September 2011 hearing, the Veteran confirmed that he was noted to have a prostate nodule that had not developed into cancer and that he had been monitoring it ever since it was first noted. As stated, he reported that he was not issued any protective equipment when he worked with boilers while in service and that he would be exposed to significant amounts of asbestos dust whenever he carried out his duties as a boiler technician. He also stated that in 1979 that he was diagnosed with prostatitis with symptoms of burning urination but apparently did not seek treatment for the prostate condition until after service. 

Pursuant to the Board's February 2014 remand, the claims file was reviewed by a VA examiner in April 2014 for the purpose of eliciting an opinion regarding the etiology of the prostate cancer. After considering the evidence of record, the examiner found that it was less likely than not that the prostate cancer was incurred in or otherwise related to service, to include as due to asbestos exposure. In support thereof, the examiner noted that the Veteran had never been diagnosed with an asbestos-related lung condition (to illustrate that the Veteran did not receive extensive asbestos exposure), and further referenced medical literature which indicate that there was no relationship between asbestos exposure and the development of cancer in areas other than the lungs. In addition, the examiner referred to medical literature which found no connection between "acute" prostatitis and prostate cancer. 

Pursuant to the Board's December 2016 remand, the Veteran was afforded an entirely new VA examination to evaluate the nature and etiology of the prostate cancer in June 2017. He reported that the prostate cancer has been in remission and the he experienced no residual symptoms other than urinary dysfunction and erectile dysfunction. As for the etiology of the condition, after reviewing the claims file, the examiner found that it was less likely than not that the prostate cancer was incurred in or otherwise caused by service, to include asbestos exposure. In support thereof, the examiner referenced medical literature which found no connection between chronic prostatitis and/or asbestos exposure and the development of prostate cancer later in life. The examiner also noted the fact that the Veteran had certain risk factors for the development of prostate cancer, including his age. 

The Veteran has submitted several more private medical records, and the claims file contains copious VA treatment records, all of which indicate that the Veteran has continued to monitor his prostate for signs of the further development of cancer. None of these records contain any evidence which would suggest that the Veteran's prostate cancer is attributable to service, to include as due to asbestos exposure. 

Upon consideration of the record, the Board finds that the preponderance of the evidence is against a determination that the Veteran's prostate cancer is attributable to his service, to include his exposure to asbestos. To begin, the evidence does not show, and the Veteran does not assert, that he developed prostate cancer while in service. Although the Veteran was diagnosed with and treated for prostatitis while in service, that prostatitis was never attributed to prostate cancer. Accordingly, service connection on a direct basis pursuant to 38 C.F.R. § 3.303(a) is not warranted. 

The Veteran's assertion that he was exposed to asbestos dust while working as a boiler technician in service is credible. Layno v. Brown, 6 Vet. App. 465 (1994). However, there is no evidence in the record which indicates that he possesses the training or credentials to competently conclude that his exposure to asbestos dust led to the development of prostate cancer after service. Jandreau v. Nicholson, 491 F.3d 1372 (Fed. Cir. 2007). Such a medical determination is made through the use of clinical evaluations by a medical professional with the specialized education, training, or experience to offer an opinion regarding the etiology of a disease. 

The Veteran's contentions must be considered in light of the medical opinions from VA examiners who have evaluated the Veteran's claim. Although the June 2010 VA examiner did not specifically opine as to whether the prostate cancer was attributable to in-service prostatitis, they did find that it was less likely than not that the cancer was attributable to in-service asbestos exposure, and supported that opinion with reference to medical literature and the Veteran's history of treatment for prostate cancer. The April 2014 and June 2017 VA examiners similarly found that it was less likely than not that the cancer was attributable to in-service asbestos exposure, and further found that it was less likely than not that the cancer was attributable to in-service prostatitis. Both of those opinions were supported by a review of the record and reference to medical literature. In short, as all of the VA opinions in this matter had a sufficient rationale, the Board finds that they are highly probative of the issue of whether the prostate cancer is attributable to service, to include as due to in-service asbestos exposure. Sklar v. Brown, 5 Vet. App. 140 (1993) (The probative value of a medical opinion is based on the scope of the examination or review, as well as the relative merits of the analytical findings). 

The Veteran may still be entitled to service connection for prostate cancer if all of the evidence establishes that the condition was incurred in service. 38 C.F.R. § 3.303(d). However, in recognition of the absence of evidence tending to show that the Veteran's prostate cancer is attributable to asbestos exposure, and in light of the highly probative VA examiner opinions, the Board finds that the preponderance of the evidence weighs against a finding that the Veteran's prostate cancer is attributable to asbestos. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Service connection for prostate cancer under 38 C.F.R. § 3.303(d) is denied, and as such the Veteran's claim of entitlement to service connection for prostate cancer in total must be denied. 

As the preponderance of the evidence is against the Veteran's claim of service connection for prostate cancer, the benefit-of-the-doubt standard of proof does not apply. 38 U.S.C.A. § 5107(b).

Lumbar Spine Condition

The Veteran asserts that his lumbar spine condition, which manifested after his discharge from service, is directly attributable to his service. In the alternative, he has set forth the theory that his lumbar spine condition is secondary to his service-connected hepatitis C. 

A review of the Veteran's service treatment records shows that the Veteran was never diagnosed with or treated for any symptoms related to a lumbar spine condition. He was evaluated as having no abnormalities on his November 1979 discharge examination. As the Veteran has never contended that he incurred a lumbar spine condition during service, and as there is no evidence in the record to suggest that this is the case, the Board finds that service connection on a direct basis pursuant to 38 C.F.R. § 3.303(a) is not warranted. 

Post-service, records from a Dr. R.L. show that the Veteran sought treatment for low back pain with spams as early as September 1993. An April 1999 radiological examination showed no abnormalities of the lumbar spine and bilateral, partial lumbarization of the S1 segment. Subsequent outpatient records from Dr. R.L. show that the Veteran continued to receive treatment for low back pain, diagnosed variously as lumbago and/or lumbosacral strain. 

Separate private medical records from a Dr. R.S. show that the Veteran sought treatment from him for low back pain as early as July 2007. A MRI revealed no abnormalities other than very minimal posterior disk bulges at L3-4 through L5-S1. Subsequent outpatient records from Dr. R.S. show that the Veteran continued to receive treatment for low back pain, evaluated as chronic back pain with sciatica. 

The Veteran was afforded a VA examination to evaluate the nature and etiology of the lumbar back condition in June 2017. He reported experiencing low back pain for many years, and also acknowledged that he had a work related injury to his low back in 2008. According to the Veteran, he was diagnosed with right sacroiliac dysfunction at that time and that he retired due to back pain in 2010. He endorsed experiencing tightness and soreness in the right side of his low back with chronic numbness in his left thigh extending into the left calf. After a review of the record, the examiner also noted that the Veteran was involved in a motor vehicle accident in July 1993 and furthermore injured himself on April 1993 when he fell six feet onto concrete stairs. An X-ray examination showed mild anterior wedging at T11 and T12 as well as lateral masses at L5 which formed pseudoarthroses. The diagnoses were right sacroiliac dysfunction and degenerative disc disease of the lumbar spine. 

With regard to the etiology of the lumbar back condition, the examiner opined that it was less likely than not that the condition was incurred in or caused by service. In support thereof, the examiner referred to a report of medical history the Veteran completed in 1988 before he began to work as a plumber wherein he stated that he had no physical impairments. Furthermore, the examiner highlighted the fact that the Veteran was diagnosed with right sacroiliac dysfunction in 2008 only after a work related injury that occurred in May 2008. As for the purported connection between the lumbar back condition and service-connected hepatitis C, the examiner noted that the hepatitis C was diagnosed and treated in 1993 and had not been active since then. Accordingly, the examiner found that it was less likely than not that the hepatitis C resulted in the 2008 diagnosis of a lumbar back condition that manifested 15 years later. 

Pursuant to 38 C.F.R. § 3.310, a disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. Secondary service connection is permitted based on aggravation. Compensation is payable for the degree of aggravation of a nonservice-connected disability caused by a service-connected disability. Allen v. Brown, 7 Vet. App. 439 (1995). The Board acknowledges that the Veteran has competently asserted that he experienced low back pain for several years prior to the 2008 diagnosis of right sacroiliac dysfunction. Layno, 6 Vet. App. at 469. However, he has not shown that he has the requisite training and credentials to conclude that his lumbar back disorder is attributable to service, to include as secondary to his service-connected hepatitis C. Jandreau, 491 F.3d at 1372. 

His assertions must be considered in light of the opinion of the June 2017 VA examiner, who found that it was less likely than not that the lumbar spine disorder was related to service, to include as secondary to hepatitis C. The Veteran has never submitted a statement from a medical professional in support of his contention that his lumbar spine disability is due to service or that it is attributable to hepatitis C, to include on an aggravation basis. Moreover, the claims file is absent any documentation of the Veteran seeking treatment for low back pain until 1993, nearly 15 years after his discharge from service. He was not formally diagnosed with a lumbar back condition until the 2008 diagnosis of right sacroiliac dysfunction. In finding that the preponderance of the evidence was against a determination that the lumbar spine disorder was attributable to service or the hepatitis C, the examiner considered the Veteran's history of low back pain and specifically highlighted the fact that the biomechanical conditions that the Veteran was diagnosed with would have no discernible connection to the hepatitis C infection of the liver. The examiner also noted the gap of several years between the Veteran's discharge from service and the date at which he began reporting symptoms of chronic low back pain. The Board therefore finds that the opinion of the June 2017 VA examiner to be highly probative of the issue at hand. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 303 (2008) (a VA medical examiner's opinion must be supported by sufficient evidence and cannot necessarily rely solely on the claim file alone).

Although the Veteran has maintained that his lumbar spine condition is secondary to the service-connected hepatitis C, the lack of competent evidence to support this assertion makes his contention far less probative than the June 2017 VA examiner's opinion. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (holding that the Board can "weigh the absence of contemporaneous medical evidence against the lay evidence of record"). Accordingly, the Board finds that the preponderance of the evidence is against a grant of service connection as secondary to hepatitis C pursuant to 38 C.F.R. § 3.310. 

The Veteran may still be entitled to service connection if all of the evidence establishes that a lumbar spine condition is otherwise attributable to service. 38 C.F.R. § 3.303(d). Here, however, there is no objective evidence of incurrence in service, and there is a nearly 15-year gap between discharge and first recorded instances of the Veteran seeking treatment for low back pain. The Board acknowledges that the Veteran has attested to experiencing symptoms of a lumbar spine condition for many years, but, without any documentation of continued treatment for a low back disability in service and for nearly 15 years thereafter, the Board cannot rely on the Veteran's statements alone. Thus, the Board finds that the preponderance of the evidence weighs against a finding that the Veteran's lumbar spine condition is otherwise attributable to service. Service connection for a lumbar spine condition under 38 C.F.R. § 3.303(d) is denied, and as such the Veteran's claim of service connection for a lumbar spine condition in total must be denied. 

In summary, as the preponderance of the evidence is against the Veteran's service connection claim, the benefit-of-the-doubt standard of proof does not apply, and the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107(b).

Left Knee Condition

The Veteran seeks service connection for a left knee condition. Without fully addressing the merits of this claim, the Board finds that the evidence of record does not support that the Veteran has a diagnosable left knee condition and that therefore his service connection claim must be denied. 

The Veteran was afforded a VA examination in June 2017 to evaluate the nature and etiology of his claimed bilateral knee condition. He reported experiencing pain in both of his knees for many years, and also stated that his knees made a creaking sound with movement. He did not endorse symptoms of instability or locking in his left knee, although he did acknowledge that both knees would swell with increased weight bearing activity. A physical examination revealed no loss of range of motion in the left knee, nor was any ankylosis, instability or effusion noted either. An X-ray examination revealed no abnormalities. It was the examiner's opinion that there was insufficient evidence to support the diagnosis of a left knee condition. 

In a separate corresponding opinion regarding the etiology of the bilateral knee condition, the June 2017 examiner reiterated that there was insufficient clinical evidence to support the diagnosis of a left knee condition. Having stated that, the examiner proceeded to discuss the Veteran's history of complaints of knee pain, and acknowledged the one isolated complaint of bilateral knee pain in service in May 1977. However, the examiner highlighted the fact that the Veteran reported that he had no physical impairments on a certificate of medical exam prior to starting his work as a plumber in 1988, some eight years after service. The examiner concluded by stating it was at least as likely as not that the Veteran's knee symptoms were due to overuse during many years of physical labor. 

There is no additional evidence in the claims file to support the Veteran's assertion that he has a left knee condition for which he is entitled to service connection, let alone one that is etiologically related to his hepatitis C diagnosis. A review of the claims file, to include copious post-service treatment records, both private and through VA, revealed no diagnosis of a left knee condition and no consistent reporting of left knee condition symptomatology. The Veteran has presented no testimony or correspondence to explain why he contends that he has a left knee condition that is attributable to his service. While the Veteran is competent to report left knee condition symptomatology, he does not have the training or credentials to ascertain that such symptoms constitute a clinical diagnosis. Under these circumstances, the Board finds that there is insufficient evidence that the Veteran has a left knee condition and that therefore the Veteran's claim of entitlement to service connection for a left knee condition must be denied. Brammer v. Derwinksi, 3 Vet. App. 223, 225 (1992). There is no competent evidence of a left knee condition for VA purposes during any period under appeal.

Right Knee Condition

The Veteran contends that he developed a right knee condition in service that has continued to progressively worsen ever since he left service and especially once he began working as a civilian plumber. In the alternative, he contends that the right knee condition had been permanently aggravated by his hepatitis C. 

A review of the Veteran's service treatment records shows that he complained of a right laceration in October 1976 that appears to have resolved after treatment and a few days recovery. Thereafter, in May 1977 the Veteran complained of pain in both knees for the past two weeks. A physical examination did not reveal any abnormalities, and the examiner's impression was chondromalacia patella. Subsequently, in September 1977, the Veteran again complained of right knee pain. A physical examination revealed no abnormalities, and no formal diagnosis was set forth. No further records document that the Veteran complained of or was treated for symptoms of a right knee condition in service. He was evaluated as having normal knees on his November 1979 discharge examination. 

The record reflects that the first time the Veteran sought treatment for symptoms of a right knee condition apparently was in 1997 with Dr. R.L. He was referred to Queen's Medical Center in April 1998 by Dr. R.L. for a bone scan, which revealed a post-traumatic change at the distal third of the left clavicle and no other abnormalities. Thereafter, a July 2004 operative report from Kapi'Olani Medical Center shows that the Veteran underwent a right knee meniscectomy after being diagnosed with a medical meniscus tear in his right knee. The postoperative diagnoses were complex tear of the anterior third medial meniscus and posterior horn of the lateral meniscus, grade III chondromalacia of the medial femoral condyle, intact anterior cruciate ligament, and mild synovitis. There are no records available, however, that document why the surgery was administered and what the status of the Veteran's right knee was after the surgery. VA treatment records do not show that the Veteran has received any treatment for his right knee through VA. 

The Veteran was afforded a VA examination in June 2017 to evaluate the nature and etiology of his claimed bilateral knee condition. He reported experiencing pain in both of his knees for many years, and also stated that his knees made a creaking sound with movement. He endorsed symptoms of instability and locking in his right knee, and also acknowledged that both knees would swell with increased weight bearing activity. A physical examination revealed no loss of range of motion in the right knee, nor was any ankylosis, instability or effusion noted either. An X-ray examination revealed no abnormalities. After concluding the examination the examiner confirmed the diagnosis of a right knee meniscal tear. 

In a separate corresponding opinion regarding the etiology of the bilateral knee condition, the June 2017 examiner acknowledged complaints of bilateral knee pain in service in May 1977 and the more specific complaints of right knee contusion in October 1976 as well as right knee pain again in September 1977. However, the examiner highlighted the fact that the Veteran reported that he had no physical impairments on a certificate of medical exam prior to starting his work as a plumber in 1988, some eight years after service. The examiner also noted that there were no records documenting why the Veteran had right knee surgery in 2004, nor were there any records showing what sort of treatment the Veteran received, if any, following the 2004 surgery. The examiner concluded by stating it was less likely than not that the right knee symptoms were due to military service. Instead, the examiner found that it was at least as likely as not that the Veteran's right knee symptoms were due to overuse during many years of physical labor. 

In an August 2017 addendum opinion, the examiner further stated that it was less likely than not that the right knee condition was proximately due to or the result of hepatitis C. Noting the Veteran's diagnosis of and treatment for tears in the medial and lateral meniscal cartilage, the examiner found no evidence or medical literature which would suggest that the hepatitis C infection in the liver, which was diagnosed and treated in 1993, would have any impact on the biomechanical right knee condition that manifested 10 years later. 

Upon consideration of the record, the Board finds that the preponderance of the evidence is against a determination that service connection is warranted for a right knee condition. The Board acknowledges that service medical records show that the Veteran was treated for right knee pain in service in 1977. However, the fact that subsequent treatment records do not reflect continuing treatment for the right knee after September 1977 suggests that the right knee pain symptoms resolved. Furthermore, the Veteran's knees were evaluated as being normal on the November 1979 discharge examination. 

During the June 2017 examination, the Veteran asserted that he had experienced bilateral knee pain for many years, but he did not specify whether the knee pain he described had continued in a chronic, uninterrupted manner from the documented in-service knee pain. Granting the Veteran the benefit of the doubt, he is credible to assert that he has continued to experience knee pain since it first manifested in service. Layno, 6 Vet. App. at 465. However, there is no evidence in the record which indicates that he has the training or credentials needed to competently conclude that he has had a diagnosable right knee condition ever since the right knee pain manifested in service. Jandreau, 491 F.3d at 1372. 

The Veteran's contentions must be considered in light of the June 2017 VA examiner's opinions. In concluding that it was less likely than not that the right knee condition was incurred in service, the examiner reviewed the Veteran's medical history and highlighted the significant gaps of time between the Veteran's service and his documented complaints of right knee pain after service. The examiner also noted that the Veteran reported having no physical impairments upon entering civilian service in 1988. Furthermore, the examiner referred to the utter lack of documentation to explain why the Veteran had right knee meniscal surgery in 2004 and to show what sort of treatment he received for the right knee after this surgery. Finally, the examiner discussed the Veteran's long history of difficult physical employment after service, and found it more likely than not that the Veteran's right knee pain complaints were attributable to this post-service physical labor. 

As the June 2017 VA examiner's opinion had a sufficient rationale, the Board finds that it is highly probative of the issue of whether the right knee condition was incurred in service. Sklar v. Brown, 5 Vet. App. 140 (1993) (The probative value of a medical opinion is based on the scope of the examination or review, as well as the relative merits of the analytical findings). The Veteran has not submitted any competent evidence to support his contention that his in-service complaints of and treatment for right knee pain were manifestations of the right knee condition he currently suffers from, and the claims file is absent any documentation of the Veteran being treated for right knee pain for nearly 20 years after the documented complaints in service in 1977. Accordingly, the Board finds that the June 2017 VA examiner's opinion is far more probative than the Veteran's general contention that he developed a right knee condition in service that has continued to the present. In the absence of any other supporting evidence, the Board concludes that the preponderance of the evidence weighs against a finding that the Veteran's right knee developed in service, and that therefore service connection on a direct basis pursuant to 38 C.F.R. § 3.303(a) must be denied. 

The analysis now moves to whether the Veteran is entitled to service connection for a right knee condition as secondary to service connected hepatitis C pursuant to 38 C.F.R. § 3.310. Again, the Board acknowledges that the Veteran has competently asserted that he has experienced right knee pain for several years, but he does not have the requisite training and credentials to competently conclude that his right knee condition has been permanently aggravated by his service-connected hepatitis C. Jandreau, 491 F.3d at 1372. 

His assertions must be considered in light of the addendum opinion of the June 2017 VA examiner, who found that it was less likely than not that the right knee condition was secondary to hepatitis C. The Veteran has never submitted a statement from a medical professional in support of his contention that his right knee condition is attributable to hepatitis C, and in fact the claims file is entirely devoid of any competent evidence suggesting a causal link, either in terms of incurrence or aggravation, between these two disorders. In finding that the preponderance of the evidence was against a determination that the right knee condition was secondary to hepatitis C, the examiner considered the Veteran's history of right knee pain and specifically highlighted the fact that the biomechanical conditions that the Veteran was diagnosed with would have no discernible connection to the hepatitis C infection of the liver. The examiner also noted the gap of several years between the Veteran's treatment for hepatitis C in 1993 and the date at which he was diagnosed with and treated for a right knee meniscal tear. Although the Veteran has maintained that his right knee condition is secondary to the service-connected hepatitis C, the lack of competent evidence to support this assertion makes his contention far less probative than the June 2017 VA examiner's opinion. See Buchanan v. Nicholson, 451 F.3d 1331, 1337 (holding that the Board can "weigh the absence of contemporaneous medical evidence against the lay evidence of record"). Accordingly, the Board finds that the preponderance of the evidence is against a grant of service connection as secondary to hepatitis C pursuant to 38 C.F.R. § 3.310. 

The Veteran may still be entitled to service connection if all of the evidence establishes that a right knee condition is otherwise attributable to service. 38 C.F.R. § 3.303(d). Here, although there is evidence that the Veteran incurred a right knee condition, the fact remains that there is a 20 year gap between those recorded complaints of right knee pain and the point at which the record reflects that the Veteran first complained of right knee pain after service. In those twenty years, the Veteran was evaluated as having normal knees on his discharge examination and reported no problems with his knees when he entered civilian service in 1988. As the June 2017 examiner noted, he also engaged in difficult physical labor regularly while out of service for the majority of those twenty years. The Board acknowledges that the Veteran has attested to experiencing symptoms of a right knee condition for many years, but, without any documentation of continued treatment for a low back disability in service and for nearly 20 years thereafter, the Board cannot rely on the Veteran's statements alone. Thus, the Board finds that the preponderance of the evidence weighs against a finding that the Veteran's right knee condition is otherwise attributable to service. Service connection for a right knee condition under 38 C.F.R. § 3.303(d) is denied, and as such the Veteran's claim of service connection for a right knee condition in total must be denied. 

In summary, as the preponderance of the evidence is against the Veteran's service connection claim, the benefit-of-the-doubt standard of proof does not apply, and the claim is denied. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C. § 5107(b).



ORDER

Service connection for residuals of bladder cancer, to include as due to asbestos exposure, is denied. 

Service connection for prostate cancer, to include as due to asbestos exposure, is denied. 

Service connection for a lumbar spine condition, to include as secondary to service-connected hepatitis C, is denied. 

Service connection for a left knee condition, to include as secondary to service-connected hepatitis C, is denied. 

Service connection for a right knee condition, to include as secondary to service-connected hepatitis C, is denied. 



____________________________________________
A. C. MACKENZIE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs